219 A.2d 759.
THEODORE F. GOLOSKIE *et al. vs.* JOHN RECORVITZ.

MAY 26, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

ROBERTS, C. J. This bill in equity was brought to enjoin the respondent from maintaining and using a wharf extending into the northerly portion of a body of water known as the Ponagansett Reservoir located in the westerly part of the town of Glocester. The cause was heard by a justice of the superior court sitting in equity, who thereafter entered a decree denying and dismissing the bill of complaint. From that decree the complainants have prosecuted an appeal to this court.

It appears from the evidence that respondent is the owner of a tract of land lying north of the northernmost portion of the reservoir and has erected a wharf which extends into that portion of the reservoir. It further appears that the portion of the reservoir into which this wharf extends was at one time a natural pond known as Ponagansett Pond, and, after the erection of a dam in 1855, this pond was merged into the waters of the reservoir. The complainants contend in their bill that this wharf extends into the reservoir on land in which they hold title in fee subject to flowage rights and constitutes a continuing trespass, which they seek to enjoin.

The complainants have introduced into evidence a warranty deed dated December 6, 1943, in which Mabel F.

Place purports to convey to them a tract of land in Glocester known as the Saunders farm and containing about 225 acres. In the deed the land is described as bounding "Northerly on land now or formerly of David Page, Easterly on the highway and land now or formerly of Joseph Davis' heirs, Southerly on land now or formerly of Smith Peckham and the South Killingly Road, and Westerly on land now or formerly of Theodore D. F. Hammond and Amasa Tucker. Meaning and intending to convey hereby, whether the above description be sufficiently broad or not, all real estate formerly owned by the late Othniel Saunders and/or his late wife or widow, Mercy Saunders, and including the property conveyed to the said late Mercy Saunders by Alvin H. Shippee, administrator of the estate of Othniel Saunders * * *." It is to be noted that this deed was before this court for construction on a prior occasion. See *Goloskie* v. *La-Lancette,* 91 R. I. 317.

In that opinion at page 325 we held that pursuant to this deed the complainants "had title to most of the land under the reservoir north of Snake Hill Road and unquestionably to all of it surrounding the natural pond and the brook that issued therefrom." In the instant case the alleged trespass is an invasion of land that constituted the bed of the natural pond. We are persuaded that the court's language as to the complainants' title to land *surrounding* the natural pond is ambiguous and leaves open the question of whether that deed in fact purported to convey to these complainants title to the bed of the natural pond.

It is clear from the decision that the court below tried this case as one in which title to the land was claimed by each of the parties. On this theory the trial justice ruled that complainants, if they were to prevail, "must recover on the strength of their own title and not on the weakness of the respondent's title." We cannot agree, however, that this truly frames the question of law raised in the instant

case. In so ruling, the trial justice relied on *Talbot* v. *Town of Little Compton*, 52 R. I. 280, wherein the equity court did, the parties consenting, try title to a tract of land involved in litigation when such title was claimed by both the complainant and the respondent town. In the instant case, however, respondent makes no claim of title to the land in question, conceding that the land to which he has title is bounded by the northerly flow line of the reservoir and lies to the north of the area in dispute. In these circumstances it was incumbent on complainants to prove only a right to immediate possession in themselves superior to any such right in respondent, who concedes that he had none.

Whether this misconception of the applicable rule of law would in all circumstances constitute prejudicial error we do not decide. We do, however, find inescapable the conclusion that the evaluation by the trial justice on the basis of this erroneous application of the rule of law of the probative force of the evidence adduced did substantially prejudice complainants and that the ends of justice will best be served if the cause is remanded to the superior court for a rehearing. Because we take this view, we are of the opinion that some discussion as to the advisability and probative force of the documentary evidence adduced below might assist the court in dealing with evidentiary problems at such rehearing.

Applying the law as he conceived it to the evidence, the trial justice found that complainants "have failed to prove that they are the owners of the real estate where the respondent has built his wharf. * * * this Court is satisfied that the northerly boundary of the Sanders property did not extend farther north than the southerly end of the old Ponagansett Pond. The respondent's land is north of the old pond." The real question, however, is whether the land under the bed of the reservoir upon which respondent has

extended the wharf in question was included within the conveyance of Mabel Place to complainants in the deed of December 1943, and, in our opinion, the precise location of respondent's land is without materiality on that issue. What is material and controlling is the question of the location of the southerly bound of the Page land referred to in the Place deed, for it is on the location of this bound that the trial justice concluded that the land conveyed in that deed included no portion of the old Ponagansett Pond. "It is a familiar rule that what are the boundaries of land, conveyed by a deed, is a question of law; where the boundaries are, is a question of fact." *Co-operative Building Bank* v. *Hawkins,* 30 R. I. 171, 187.

The trial justice as a matter of law found that the northerly bound of the land conveyed to complainants in the Place deed coincided with the southerly bound of the land that constituted the Page farm. To establish the location of the southerly bound of the Page farm, complainants introduced into evidence their deed from Mabel Place, which, as has already been noted, purports to convey to them the land bounding northerly on land "now or formerly of David Page * * *." It is not disputed that this is a reference to the Page land, so called. The complainants then put into evidence the Waterman survey, so called, delineating the northerly flow line of the reservoir as probative of the location of the southerly bound of the Page farm along that northerly flow line.

Although admitted into evidence, the Waterman survey was rejected by the court as being completely without probative weight, this on the ground primarily that it did not disclose on its face that it was a survey of land *owned* by complainants but rather that it was a survey of land made *for* complainants. This, in effect, was to find that the Waterman survey was inadmissible for want of legal competence. We cannot agree with this conclusion. It had some

probative force on the question of the location of the southerly line of the Page property, inasmuch as the legend thereon designating the location of land "formerly of David Page" indicated that such land lay north of the northerly flow line of the reservoir. The weight to be given to the Waterman survey is, of course, a matter for the trial justice, but it does constitute legally competent evidence, and its exclusion from evidence would have constituted prejudicial error.

In our opinion, however, there was a substantial question concerning the admissibility of certain deeds introduced into evidence at the hearing below by respondent. These were introduced apparently for the purpose of establishing that the southerly bound of the Page land was marked by a stone wall which, according to the Waterman survey, does in fact mark the northerly bound of that portion of the Saunders farm which lies east of the flow line of the reservoir. These deeds, three in number, purport to be conveyances of a portion of the land included within the Page land. One, respondent's Exhibit 2, is from the Lakeview Realty Corporation to Jordan H. Edwards; another, respondent's Exhibit 1, is from said Jordan H. Edwards to Lucy Smith and Frederick B. Smith; and the third, Exhibit 22, is from the Smiths to the present respondent.

In each of the above-specified deeds there is a paragraph which states that the parcel of land therein being conveyed is bounded southerly by the waters of the reservoir and goes on further to say: "* * * the original deed of said property showing or mentioning the southerly bound of said premises as joining the Saunders land, said line being a stone wall entering the water, southerly of the lot herein described, and easterly, and again appearing westerly together with a stone bound near the shore on the westerly side in line with the easterly side of said Saunders bound (wall)." Significant of the questionable admissibility of

these deeds is the fact that the *original* deed, to which reference is made, was not introduced into evidence.

It is obvious that this reference to a description contained in an instrument that is not itself in evidence was intended to establish the southerly line of the Page land at the said stone wall so that the conveyance, so construed, would not include the bed of the old Ponagansett Pond, which lay almost entirely north of the location of said stone wall. It appears from his decision that the trial justice, in reaching his conclusion of fact as to the location of this pond, relied substantially on the reference thus contained in the three deeds referred to above and on the expert testimony of a title searcher and an experienced engineer, who made the examination and a survey on the basis of such description.

Without now intending to foreclose the admission of such deeds at a rehearing if they be offered in evidence, we are of the opinion that the admissibility thereof to explain the ambiguity of the language used in the Place deed, if it be ambiguous, is questionable. It is true that generally when the description of land conveyed in a deed is ambiguous or uncertain, resort may be had in some circumstances to another instrument to explain the meaning thereof. *Popp* v. *Kulesza,* 18 Del. Ch. 12. In *Cloyes* v. *Sweetser,* 58 Mass. 403, the rule is stated affirmatively at page 405 as: "But other instruments, which were executed between the same parties, at the same time, and respecting the same subject or estate, may well be considered in aid of the construction of any particular instrument, the terms of which are ambiguous."

Whether the court in *Cloyes* v. *Sweetser, supra,* intended to limit the admissibility to situations in which the three conditions concur we do not decide, but other courts appear to take a more liberal view on the concurrence as to the identity of the parties, the land, and the time and suggest that a deed to the same land executed at a time prior to

the execution of the deed to be explained might be admissible in the proper circumstances. In *Pinchback* v. *Hockless,* 138 Tex. 306, the reference is to a prior deed in the same chain of title, while in *Knighton* v. *Hasty,* 200 Ga. 507, the court held admissible a prior deed conveying the same parcel of land.

Whatever view this court might take as to the requirement that the instrument be of contemporaneous execution to be admissible, the admissibility of the deeds to which we here refer is indeed doubtful, all of them having been executed subsequent to the execution of the deed from Place to these complainants. Because the determination of the admissibility of these deeds or of the so-called original deed to which reference is made therein, if offered, is closely bound up with the factual determination of the location of the southerly bound of the Page land, we are constrained to leave the question as to such admissibility to the trial court in the first instance.

It being our conclusion that these complainants were prejudiced substantially by the court's action in making its findings of fact on the theory that this trial was one in which title was in litigation between the parties, we reiterate that justice will be best served by a remand thereof to the superior court for a hearing in accordance with this opinion.

The complainants' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court to be heard and determined in accordance with this opinion.

*Max Levin, John H. DiStefano, Harold I. Kessler,* for complainants.

*Edward P. Manning, Albert B. West,* for respondent.