227 A.2d 592.

EDMUND I. WALDMAN *et al. vs.* TOWN OF BARRINGTON *et al.*

MARCH 22, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This bill in equity was brought to enjoin the respondent municipality from operating a public bathing beach on land located in the town of Barrington to which the complainants claim title in fee. The cause was heard by a justice of the superior court sitting in equity,

who thereafter entered a decree denying and dismissing the bill of complaint. From that decree the complainants have prosecuted their appeal to this court.

The complainants are the owners of three parcels of land which abut a portion of the beach that extends between Bay Road on the east and Water Way on the west. Each maintains a residence on the land owned by him. The respondent maintains and operates a public bathing facility which extends for some distance along the shore up to and in front of the property of complainants.

In the conduct of this operation respondent maintains a parking area, a bathing pavilion, and a small structure that provides shelter for a police officer as well as public toilet facilities. It is contended by complainants that this use constitutes a continuing trespass in the area lying between the high-water mark and the beginning of the uplands, that is, the area to which they claim they hold title in fee. The instant bill was brought to enjoin this continuing trespass.

It appears that in 1847 one Pardon Clark was the owner of the land in question. The deed by which the land was conveyed to him contained a metes and bounds description of the tract in which reference was made to the easterly line of the lot as extending "to the town Beach." Subsequently, in 1854, Clark conveyed to Amos H. Beckwith and John T. Mauran, the deed referring to the easterly line of the property as extending "to the beach." In 1878 Beckwith and Mauran conveyed the tract to the West Elmwood Land Company, the description of the property in the deed being by reference to Martin Plat No. 2 as recorded in the records of land evidence in the town of Barrington.

In 1882 a conveyance of the tract was made by West Elmwood Land Company to Stephen A. Jenks, hereinafter referred to as Jenks. In the deed the tract was described as being bounded "North by Highland Street, on the east by Ocean Street, on the south by the Beach of Narragan-

sett Bay, and on the west by Beach Avenue." The complainants rely primarily on this conveyance to establish the southerly bound of their respective parcels.

In 1912 Jenks caused a survey to be made of the tract, and a map drawn therefrom was introduced into evidence by respondent. As thereon delineated the easterly line of the tract extends along the westerly side of Ocean street, now Bay Road, to a stone bound located at the northern line of an area described on the map as "Beach" and then turning extending northwesterly along the northerly line of the area marked "Beach" to the easterly line of Beach avenue, now Water Way. This map discloses that a number of stone bounds mark a line at the south of the Jenks property which extends along the northerly line of the area marked "Beach," and that a hedge fence extends along this same line.

In 1913 Jenks died, leaving as his heirs-at-law S. Herbert Jenks, Mary E. Easton, and Frances J. Cushman. In June 1913 these heirs executed a series of partition deeds conveying their various interests to one another in such a manner as to effect a division of the tract into three parcels. In each of these deeds the southerly line of the parcel conveyed is referred to as bounding on "Narragansett Bay." At the time these deeds were recorded another map of the tract was prepared for the heirs of Jenks, on which were delineated the boundaries of the three parcels created by the above conveyances. This map shows also that the southerly boundary of the tract extended along the northerly or in shore line of the area marked "Beach" on the prior map prepared for Jenks. Thereafter these parcels passed into the ownership of the present complainants by a series of conveyances, in most of which the southerly boundary of the tract is described as being the "beach of Narragansett Bay" or the "shore of Narragansett Bay."

Evidence was adduced also that one Frederick W. Water-

man, Jr., a qualified surveyor, had prepared plans of the shore area under consideration. He testified that he had examined all the deeds in the chain of title dated after the death of Jenks and that, according to the descriptions set out in these conveyances, the southerly line of complainants' property coincides with the line of the granite bounds running along the northerly line of the beach as well as with the hedge fence that extends along that northerly line of the beach. It is to be noted that the deeds thus examined by Mr. Waterman all contain descriptions by metes and bounds.

It is clear from the pleadings that the issue raised here does not require the court to try title to this land as between complainants and respondent. Nowhere in the record does respondent purport to claim title in itself. In such circumstance the right of complainants to the injunctive relief sought depends upon the establishment of a right to immediate possession of the land superior to any such right existing in respondent. *Goloskie* v. *Recorvitz*, 101 R. I. 4, 219 A.2d 759. In short, in the posture in which this case is presented to us complainants are not entitled to the injunctive relief sought unless they establish a right to immediate possession of the contested premises superior to that of respondent.

In order to establish the existence of this superior right to immediate possession, complainants argue that the conveyance from West Elmwood Land Company to Jenks was a conveyance of all the land to the shore at the high-water line. They argue expressly that "beach" is that portion of the shore that lies between the high-water line and the low-water line and, therefore, that a conveyance to the beach as a matter of law included all that portion of the strand lying between the upland and the high-water line.

We cannot agree with complainants' contention that a conveyance to the "beach" as a matter of law is a convey-

ance to the mean high-water line. However the term "beach" may be defined in other jurisdictions, we think there is ample authority in this state for distinguishing between the terms "beach" and "shore" when such terms are used in a legal context, particularly where they are used for the purpose of defining property rights. In *Jackvony* v. *Powel,* 67 R. I. 218, this court in a scholarly opinion by Mr. Justice Moss sought to ascertain what constitutes the "privileges of the shore" secured to the people of this state by the provisions of Art. I, Sec. 17, of the constitution. That provision reads: "The people shall continue to enjoy and freely exercise all the rights of fishery, and the privileges of the shore, to which they have been heretofore entitled under the charter and usages of this state. But no new right is intended to be granted, nor any existing right impaired, by this declaration."

The court defined the meaning of the term "shore" within the contemplation of its constitutional use. At page 228 of the opinion the court said, referring to legislation there under consideration, that it would confer upon "the respondent commission, without any restriction whatever, the power to erect fences of any sort on any part of the shore, *i.e., the land between high and low water marks * * *.*" (italics supplied) In our opinion, this is a sufficient definition of the meaning of the word "shore" to apply it technically to the land area lying between the high- and low-water lines.

However, in the opinion the court repeatedly distinguishes between "shore" as thus defined and the term "beach." At page 227 the court, describing the effect of the legislation, noted that under it the commission could prevent any person from passing "along any part of the shore between Easton's Beach and the line of mean low tide * * *." Again at page 222 the court said that the legislation under consideration would empower the commission "to prevent any of

the people of the state from passing along the shore into that part of it which is to the south of Easton's Beach."

Without intending to extend this opinion by quoting further from the opinion of Mr. Justice Moss, it is clear that the court distinguished between that which is "beach" in the legal sense and that which is "shore" in the constitutional sense. On the basis of that opinion we are persuaded that when the term "beach" is used in any legal context that bears on property rights, it will be held to apply to that area of land that lies between the high-water mark and the beginning of the upland. It is, therefore, our opinion that in the Jenks deed the conveyance of the tract "to the beach" without any language being set out therein to connote inclusiveness must be deemed to be a conveyance to the in shore line of the beach. In the instant case then it is our conclusion that the southerly bound of complainants' properties is the northerly line of the beach. It is well established that what are the boundaries of land conveyed by a deed is a question of law, but where those boundaries are is a question of fact. *Co-operative Building Bank* v. *Hawkins*, 30 R. I. 171, 187.

The trial justice found that complainants' "southerly line appears in all cases to be the line established by Stephen A. Jenks who is a predecessor in title of all of the complainants. That line is marked by granite bounds and by the hedge." It is settled that the findings of a trial justice sitting in equity are entitled to great weight and on appeal will not be disturbed unless he was clearly wrong. *City of Warwick* v. *Del Bonis Sand & Gravel Co.*, 99 R. I. 537, 209 A.2d 227. We are of the opinion that complainants have not established that the trial justice was clearly wrong in that he overlooked or misconceived any material evidence on a controlling issue in the cause.

It is clear that in reaching his conclusions as to the location of the southerly line of complainants' property, that

is, the northerly line of the beach, he relied in substantial measure on the map that Jenks had caused to be made of his property in 1912. That map, made at the request of Jenks, clearly shows the area marked "Beach" and that the northerly line of that area coincides with the southerly line of complainants' property and that said southerly line extends in a northwesterly direction through the stone bounds and along the line of the hedge fence. Concerning this evidence the trial justice said that the placing of the stone bounds during this survey was in effect a determination by Jenks "of the extent of his land to the south and of the beginning of the beach." The trial justice went on to say that whether the hedge was planted before or after the survey, it is strongly persuasive how Jenks construed the conveyance to him of the tract " ' to the beach of Narragansett Bay.' "

The trial justice relied also on testimony of the witness Waterman, who testified that in every instance where a metes and bounds description was set out in the conveyance, the survey, according to those measurements, located the southerly line of complainants' property along these stone bounds and the line of the hedge fence. In short, we are of the opinion that the trial justice was not clearly wrong in locating the northerly line of the beach along the southerly line of complainants' properties as shown upon the Jenks map.

The complainants argue in this court that their superior right to immediate possession is also established by proof of the prerequisite hostile possession on their part for a sufficient period of time to give them title on the doctrine of adverse possession. We are unable to perceive any merit in this contention. In *Sherman* v. *Goloskie,* 95 R. I. 457, we said at page 465 that to acquire land by adverse possession, "a claimant must prove actual possession of the property claimed and acts of dominion over that property that will

be sufficient in law to vest title thereto in him. * * * the possession required to acquire title under this statute must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive."

The acts of dominion to which complainants refer us in so arguing were to the effect that they had built boardwalks leading to the beach, had erected bathhouses, and had built roads and driveways and had caused the eviction of trespassers on the beach when they became noisy and so on. It is difficult to perceive from the record in the cause that the laying of boardwalks, the erection of bathhouses, and the building of driveways took place in the disputed area. Rather, it appears that these things were done on portions of the tract that lay to the north of the granite bounds and hedge fence. We, therefore, are unable to agree that the evidence adduced by complainants to support this position establishes acts of dominion sufficient to satisfy the rule for the acquisition of title by adverse possession. So far as the beach area is concerned, these were not acts by complainants consistent with those of an owner who was exercising such dominion over the property as to make manifest his intention to use it as his own.

The complainants also question the propriety of the rulings of the trial justice both as to the exclusion of evidence proffered in their behalf and the admission of evidence offered by the respondent. As we understand, the complainants are not arguing that there was any basic prejudicial error in the specific rulings. They are contending that the rulings in totality suggest that the trial justice systematically excluded evidence offered by the complainants to show what they "thought they owned" while admitting into evidence "lay opinion for the purpose of showing lack of ownership in the complainants" offered on behalf of the respondent. We are unable to agree that the record suggests any systematic exclusion of evidence proffered by the com-

plainants or that there was any similar systematic admission of incompetent evidence in behalf of the respondent. We are unable to perceive that any error inhered in these particular rulings but conclude that if any of them were erroneous, they did not prejudice the complainants. For this reason we find these contentions without merit.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*William R. Goldberg, Ronald R. Gagnon,* for complainants.

*Graham, Reid, Ewing & Stapleton, James A. Jackson,* for respondents.