Mr. Neal D. Bowen County Attorney Osceola County 17 South Vernon Avenue Room 155 Kissimmee, Florida 32741-5488
Dear Mr. Bowen:
This is in response to your request for an opinion on substantially the following question:
 WHETHER OSCEOLA COUNTY MAY EXPEND TOURIST DEVELOPMENT TAX REVENUES TO IMPROVE, MAINTAIN, RENOURISH OR RESTORE PUBLIC SHORELINE OR BEACHES OF INLAND FRESHWATER LAKES?
The "Local Option Tourist Development Act," s. 125.0104, F.S. (1986 Supp.), provides the authorization and procedures for counties to levy and impose, subject to referendum approval, a tax to be used for purposes specified therein. The authorized uses for the revenues generated are set forth in subsection (5) of the statute which, in relevant part, provides:
(5) AUTHORIZED USES OF REVENUE. —
 (a) All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only:
* * *
 4. To finance beach improvement, maintenance, renourishment, restoration, and erosion control. (e.s.)
Nowhere in this statute is the term "beach" expressly defined by the Legislature. Compare, s. 370.01(15), F.S., defining "beaches" and "shores" for purposes of Ch. 370 relating to saltwater fishing. It is a general rule of construction that where words of common usage are not specifically defined, they are to be given their plain and ordinary meaning. Southeastern Fisheries Association, Inc. v. Department of Natural Resources,453 So.2d 1351 (Fla. 1984); Citizens of State v. Public Service Commission,425 So.2d 534 (Fla. 1982); Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950) (words in statutes and constitutional provisions should be given meaning accorded them in common usage unless a different connotation is expressed in or necessarily implied from context of the statute or the constitutional provision in which they appear). The American Heritage Dictionary of the English Language 114 (New College ed. 1979) defines the word "beach" to mean:
 1. The shore of a body of water, especially when sandy or pebbly.
2. The sand or pebbles on a shore.
The term "beach" is defined by Black's Law Dictionary 194 (Rev. ed. 1968) as "not more significant of a sea margin than `shore.' " At 10 C.J.S. p. 217, it is stated that in common parlance the word "beach" has been defined as a "strip of land above the usual high-water line, more or less well defined by natural boundary, or in the rear by a sea wall, providing a convenient and safe access to the water for bathing or for sun baths either before or after going into the water; the coast, the seashore, the strand; the land, or lands, washed by the sea; the sandy shore above high-watermark; the shore of the sea, or of a lake, which is washed by tidewaters and waves; the strip of shore lying above high water." Thus defined and understood, the word "beach" includes the shoreline of both fresh and salt bodies of water. Nor does the context of its usage in s. 125.0104, F.S., as amended by Ch. 86-4, Laws of Florida, appear to indicate a different legislative intent. Compare, s. 370.01(15), F.S., which defines "beaches" for purposes of Ch. 370, relating to saltwater fisheries, to "mean the coastal and intracoastal shoreline of this state bordering upon the waters of the Atlantic Ocean, the Gulf of Mexico, the Straits of Florida, and any part thereof, and any other bodies of water under the jurisdiction of the State of Florida, between the mean high-water line and as far seaward as may be necessary to effectively carry out out the purposes of this act."
My research failed to disclose a judicial decision which limits the application of the word "beach" to those areas contiguous to saltwater. Compare, Waldman v. Town of Barrington, 227 A.2d 592
(R.I. 1967) (when used in any legal context that bears on property rights, "beach" applies to that area of land that lies between the highwater mark and the beginning of the upland). See also, C. Beck Company v. City of Milwaukee, 120 N.W. 293, 296 (Wis. 1909) (the word "beach" is synonymous with "shore," and means that portion of the shore or lake between ordinary high and low water mark); Sun Dial Ranch v. May Land Company, 119 P. 758 (Or. 1912) (the margin of the bed of a river which lies between high and low water mark is called the "beach" or "shore"). Accordingly, in the absence of any judicial or legislative determination to the contrary, I am of the opinion that the word "beach" as used in s. 125.0104(5)(a)4., F.S., encompasses beaches of inland freshwater lakes.
In AGO 83-18, this office concluded that the intent and purpose for the "Local Option Tourist Development Act," s. 125.0104, "was to provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state." That opinion went on to make it clear that
 [t]he determination whether a particular facility or project, tourist development plan or program is tourist related and furthers such primary purpose is a factual determination which must be made by the legislative and governing body of the county founded upon appropriate legislative findings and due consideration of the peculiar and prevailing local conditions and needs; it is not a determination which this office can make for a county.
 You state in your letter that the projects the board of county commission has in mind in particular include the restoration of the natural features of the shoreline ("beach areas") of Lake Tohopekaliga, a major recreational tourist attraction and natural resource of the State of Florida. It would therefore appear that s. 125.0104(5)(a)4., F.S., authorizes the expenditure of tax revenues generated under that statute for the improvement, maintenance, renourishment, restoration, and erosion control of beaches whether located on fresh or salt bodies of water, if related to tourism in the county. See also, AGO 86-68 for a discussion of the necessity for expenditures of public funds or tax revenues to paramountly further a public purpose. A limitation, however, has been placed on the pledging of tax revenues generated under s. 125.0104, F.S. (1986 Supp.), to secure and liquidate revenue bonds issued for the purposes set forth in subparagraphs (5)(a)4. of that statute. That limitation provides that "no more than 50 percent of the revenues from the tourist development tax may be pledged to secure and liquidate revenue bonds or revenue refunding bonds issued for the purposes set forth in subparagraph (a)4." Section 125.0104(5)(b), F.S. (1986 Supp.).
 In conclusion, I am of the opinion that, unless and until judicially or legislatively determined otherwise, a county may expend tourist development tax revenues to finance improvement, maintenance, renourishment, restoration, and erosion control of the public beaches on freshwater lakes if primarily related to tourism in the county.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
Craig Willis Assistant Attorney General