DECISION
The Plaintiffs in this matter, Kimberley Waltz and Elaine Barboza, seek from this Court a declaration of what, if any, rights have been conferred upon the Defendants to enter upon and utilize a certain portion of the Plaintiffs' deeded shore-front lot referred to as the "Rocky Ledge."[1] It is undisputed that the Plaintiffs' deed (Ex. 8) granted them ownership in fee simple of the area in controversy. *Page 2 
The various Defendants have asserted alternative theories as the underpinning of their claimed rights which they argue are deeded or accorded them by prescriptive easement or implied dedication.
By way of stipulation at trial, the parties agreed to the following description of the historical use of the disputed area:
 Since at least 1950 residents of the subdivision and members of the public have periodically accessed the ledge area in front of plaintiff's [sic] shoreline property including the so-called Fisherman's Path. Their use of the ledge area and the beach in front of plaintiffs' shoreline property has included fishing, walking, sunbathing and picnicing [sic], etc. These uses have not been with the express permission of owners of Lot 2G nor have the owners of Lot 2G[2] expressly denied permission, except the current owners, the plaintiffs.
The group of Defendants (those with the surnames Camara, Wieszbicki, Podesky, Desa, Soares, and Plouff) claiming deeded rights[3] emphasize that the deed language accords them the "right to use the beach or shore for boating and bathing in common with the other ownership on said plat." (Ex. 15.)
This relied upon clause in no way creates any right which would allow common grantees (this group of Defendants) to enter upon the Plaintiffs' parcel. The evidence (assisted by the view) is unequivocal that the area in controversy is neither beach nor shore. Certainly, all Rhode Island citizens enjoy the right to share in the "privileges of the shore" but shore is designated as the "land between high and low water marks."Jackvony v. Powel, 67 R.I. 218, 228, 21 A.2d 554, 558 (1941). Since the disputed area of rocky bluff is above the high water line, it cannot be characterized as a part of any "shore." (Exs. 43, 44, 45, 46, 48, and 50.) *Page 3 
Neither can the terrain in controversy properly be labeled a beach which is defined as the area of land lying between the high water mark and the beginning of the upland. Waldman v. Town of Barrington,102 R.I. 14, 227 A.2d 592 (1967). "Coastal beaches" are described in Rhode Island's Coastal Resources Management Council's regulations as those lands consisting of "unconsolidated, usually unvegetated sediment commonly subject to wave action. Beaches extend from mean low water landward to an upland rise usually the base of a dune, headland bluff, or coastal protection structure, pilings or foundation." Code R.I. R. 04 000 010, § 210.1(A).
Courts have also employed dictionary definition in determining "what the word `beach' means." Pacheco v. United States, 220 F.3d 1126, 1129
(9th Cir. 2000). In Pacheco the court noted as follows:
 One dictionary, Oxford American, defines "beach" as "the shore between high and low water mark, covered with sand." Oxford American Dictionary 52 (1980). However, Webster's Dictionary, in a more expansive definition, defines a beach as "a gently sloping shore of an ocean . . . covered by sand." Webster's Third New International Dictionary 189 (1981). It also defines a beach as "a stretch of sand placed beside a bathing area for the bather's pleasure and recreation."
Since the jagged and extremely steep promontory located on Plaintiffs' property is composed of solid rock and not unconsolidated sediments neither its face nor its top surface (including the so-called Fisherman's Path) constitutes a "beach."[4] The deeded rights of the *Page 4 
Defendants to use the "beach or shore" do not bestow upon them any privilege to make use of the ledge.
The Defendants next argue that an easement by prescription has been created which permits them access to the ledge and to the waterfront by way of "Fisherman's Path."
In order to acquire a prescriptive easement, the Defendants must establish, by clear and convincing evidence, actual, open, notorious, hostile, and continuous use under a claim of right for a period of ten years. Carpenter v. Hanslin, 900 A.2d 1136, 1146 (R.I. 2006) (citingAltieri v. Dolan, 423 A.2d 482, 483 (R.I. 1980)).
The previous owner of Plaintiffs' lot, Robert Mello, testified that he traversed the ledge without asking Plaintiffs' permission because he "did not need their permission," and the Plaintiffs "could not stop him." Mr. Mello acknowledges that he had "run-ins" with the Plaintiffs, one such run-in escalating into an assault upon Plaintiff Elaine Barboza (to which he pled guilty).
Mr. Augusto Desa also testified to his historical use of the path and the ledge, the latter for fishing and harvesting mussels as well as diving until 1970 when he lost his brother, and no longer "felt right about it."
Another area resident, Jose C. Pedro, "knew Fisherman's Path very well" and went "fishing and crabbing [there] all the time." This activity ceased in 2000 when the "path" became planted with grass and bushes.
The Defendants argue that the foregoing testimony (along with that of Evelyn Wieszbicki) combined with the trial stipulation (regarding the 50-year use of the "path" and "ledge") conclusively establishes open and adverse use of the area. *Page 5 
Our Supreme Court has, for decades, reaffirmed the fundamental principle that a prescriptive easement may not be established solely by foot traffic even when the use has been long and continued.Carpenter, 900 A.2d at 1147 (citing Palisades Sales Corp. v. Walsh,459 A.2d 933, 937 n. 8 (R.I. 1980); Daniels v. Blake, 81 R.I. 103, 108,99 A.2d 7, 10 (1953)). Since 1896, Rhode Island has denied acquisition of the right-of-footway by prescription or adverse use "except as claimed in connection with a right to pass with carriage." G.L. 1956 § 34-7-4. The Defendants' contention that they have sustained their burden of proving an easement by prescription over the "path" is devoid of both evidentiary and legal foundation.
Dressing up the defense argument in the legal costume of adverse possession is equally unavailing. The record contains no credible evidence of the requisite elements of exclusivity and hostility.
Thus, the Defendants have not proven the acquisition of any rights to the disputed area regardless of which of the above-mentioned theories is applied.
Lastly, the Defendants claim a right to use the "path" and the "ledge" due to the area's implied dedication to the public. Our Supreme Court has recognized that "the dedication of land to the public is `an exceptional and unusual method by which a landowner passes to another an interest in his [or her] property.'" Newport Realty v. Lynch,878 A.2d 1021, 1032 (R.I. 2005) (quoting Ribidoux v. Pelletier, 120 R.I. 425,433, 391 A.2d 1150, 1154 (1978)). "[E]ssential to a valid dedication [are] a manifested intent by the owner to dedicate the land in question for the use of the public, and an acceptance by the proper authorities or by the general public." Vallone v. City of Cranston Dep't of Pub.Works, 97 R.I. 248, 255, 197 A.2d 310, 314 (1964).
No plausible interpretation of the credible evidence presented could conceivably support a finding of dedicatory intent and/or public acceptance. *Page 6 
As noted by the Plaintiffs — "the Defendants claim implied dedication as to Plaintiffs' parcel that was expressly conveyed by deed at the time it was severed from common ownership in December 1964. (Ex. 4.) Subsequently, each owner down to the time the Plaintiffs purchased the lot in 2001 re-conveyed the lot by a written deed; none of these deeds contain any express reservation or other indication of intent to relinquish any part of the lot to the public. (Exs. 5, 6, 7, and 8.) Each deed is an express negation of any intent to dedicate. This four-decade pattern of conveyance by written deed alone should conclusively foreclose any finding that some prior owner implicitly dedicated the bluff to the public. See Newport Realty, 878 A.2d at 1034;Swanson v. Gillan, 54 R.I. 382, 383-84, 173 A. 122, 123 (1934). (Pls.' Post-Trial Mem. at 13.)
Moreover, there exist platted ways on the recorded subdivision plan which afford convenient and safe access to the beach for all of the residents.
Even if the Court did find "dedicatory intent," and it specifically declines to do so, the evidence of "public acceptance," where it exists at all in the record, is gossamer. The only evidence proffered on this point was furnished by Mrs. Wieszbicki who testified that she recalled a time when Town of Tiverton vehicles placed a trash barrel on the lot and periodically removed its contents. Mrs. Wieszbicki stated that she has been "familiar with the property" since 1952 and observed the activity then but was "not to sure" as to when she last saw the receptacle.
The Defendants have failed to sustain their requisite evidentiary burden of proof under any of their asserted theories of recovery. Clearly, the Defendants have the right to use the "beach" as defined by our Supreme Court. It is legally impermissible, however, for them to access that beach by going upon any portion of Plaintiffs' lot.
Counsel for the Plaintiffs shall prepare an order conforming to this Decision.
[1] This Court has viewed and walked through Plaintiffs' entire lot including the shore and beach, as well as the ledge.
[2] This is the lot owned by the Plaintiffs containing the Rocky Ledge.
[3] Defendants Mello, Poissant, and Pedro are disabled from purporting to enjoy any deeded rights because the pertinent instruments are devoid of any language which would give rise to such a claim. (Exs. 9 and 17.)
[4] The Court declines to consider the Defendants' suggestion that the "beginning of the uplands" (the top of the coastal bank or the 14 foot contour line depicted in Exhibit 35) constitutes the "landward boundary of the extent of the beach or shore as provided in deed language," as it is without evidentiary basis. (See Defs.' Post-Trial Mem. at 16.) Defendants' own expert, Roger Lizotte, testified that he had no opinion, with the requisite certainty, as to where the uplands begin. He did testify that he would define uplands as the "point where a steeper slope changes into a more gradual one." Mr. Lizotte did not derive this definition from any authority but rather "made it up" explaining ". . . I have two degrees in English, I can make up definitions." (Test. of Roger Lizotte.)
 *Page 1