**363 A.2d 444.**

Bristol County Water Company *vs.* Public Utilities Commission.

AUGUST 23, 1976.

Present: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris JJ.

90

PAOLINO, J. This case is before us on Bristol County Water Company's (the company) statutory petition for certiorari under G.L. 1956 (1969 Reenactment) §39-5-1, as amended. The company seeks review of a decision and order regarding its rate structure issued by the Public Utilities Commission (the commission) on April 30, 1975.

These proceedings were initiated on June 24, 1974, when the company, pursuant to §39-3-11, submitted to the commission a revised tariff plan proposing a change in the rates to be charged the company's customers. The rates were to have gone into effect under the terms of §39-3-11 on August 1, 1974, but on July 15, 1974, in accordance with the powers conferred upon it by §39-3-11, the commission suspended the implementation of said rate changes for 6 months from the date those changes were to have become effective.

A hearing regarding the proposed rates was conducted by the commission on October 16, 1974. The commission took no further action with respect to the company's request until February 3, 1975, about 6 months after the original suspension, when it entered an order suspending the implementation of the proposed changes for an additional 3 months as allowed by §39-3-11. This order was not included in the record transmitted to this court and the company maintains that its records do not indicate receipt of any such order. It is not clear that any one party is to be faulted for the omission but the commission has filed a motion to correct the record and is willing, for purposes of that motion, to admit its own inadvertance in the matter.

On April 30, 1975, upon the expiration of the 3-month suspension, the commission announced its decision and order in this case. This 13-page document reviewed the record evidence concerning primarily the company's rate base, the cost to the company of providing services to its customers, and the rate of return to which the company is entitled. In general terms, the commission found that the company's proposed additional annual revenue was excessive, unjust and unreasonable; but that the revenues being received by the company under its old rate structure were inadequate to maintain the company's credit or to attract necessary capital investment; that a rate of 8.0 to 8.2 percent on a $4.4-million rate base was adequate to insure the company's integrity; and that the company was entitled to revise its rates upward so as to produce additional revenue of $134,940 annually. The commission concluded therefore that the company's proposed tariff, which anticipated a revenue increase of $265,793, must be rejected and it ordered the company to submit a new tariff which would produce the smaller amount of revenues mentioned above.

In its petition for certiorari, the company presses two major points. First, it argues that the commission, by issuing its decision and order 6 months after the hearing on this matter was completed, breached its statutory duty to issue such document "[w]ithin ninety (90) days after the completion of any such hearing." Section 39-3-11. Second, the company argues that the decision and order itself is illegal, arbitrary and unreasonable in that certain of the commission's adjustments to the company's proposal are unsupported by the record evidence.

In its brief, the commission rebuts the company's first argument with the assertion that there is a conflict between the provision of §39-3-11 allowing the commission to suspend the implementation of proposed rate schedules up to a total of 9 months, and the provisions of the same section requiring the issuance of a decision and order within 90 days of the commission's hearing on the matter. The commission urges that sound public policy requires that this conflict be resolved in favor of the 9-month provision. It argues that strict imposition of the requirement of a decision within 90 days may work to forestall hearings in any rate proceedings until the final 3 months of the suspension period.

In response to the company's second argument, the commission merely presents its own review of the record evidence supporting the conclusions reached in the decision and order.

## I

Turning now to a consideration of the first point raised by the petition, we must determine whether §39-3-11 is, indeed, internally inconsistent and, if it is, how that inconsistency is to be resolved. Thus, we are confronted with a pure problem of statutory construction. The statute reads, in pertinent part, as follows:

"* * * the commission shall have power by any order served upon the public utility affected to suspend the taking effect of such change or changes pending the decision thereof, but not for a longer period than six (6) months beyond the time when such change or changes would otherwise take effect; provided, however, that in the event that any such hearing and/or investigation shall not have been completed at the expiration of said six (6) month period, the commission shall have power by an order served upon the public utility affected to further suspend the taking effect of such change or changes pending the decision thereon, but not for a longer period than three (3) months beyond the expiration of the first mentioned six (6) month period. * * * Within ninety (90) days after the completion of any such hearing, the commission shall make such order in reference to any proposed rate, toll or charge as may be proper."

The canons of statutory construction in a case such as this are by now familiar. In construing separate provisions within a single statute, this court is required to consider every part of the statute and, if possible, to give effect to every word, clause and sentence thereof. *Britto* v. *Fram Corp.*, 93 R. I. 426, 434, 176 A.2d 81, 85 (1961). And, in scrutinizing the language of such a statute, words used therein must be given their ordinary and customary meaning unless a contrary intention clearly appears on the face of the statute. *Andreozzi* v. *D'Antuono,* 113 R. I. 155, 158, 319 A.2d 16, 18 (1974).

Turning to the statute at issue in the present case, we find that there are indeed two separate provisions which, by the commission's interpretation, can operate towards conflicting ends. That is, the statute might appear to guarantee to the commission at least 6 months in which to deliberate the merits of a proposed rate plan, yet at the same time requires the commission to issue a decision and order within 90 days of the completion of their hearing on the matter. Thus, if the commission completes its

hearing more than 90 days prior to the expiration of the 6-month suspension, it would deprive the commission of its power to suspend such rate changes for the full 6 months. The commission maintains that the only satisfactory resolution to this dilemma is to give precedence to the 6-month and 3-month suspension provisions over the 90-day provision.

Our review of the language in the light of the canons of construction heretofore set forth indicates that a lesser degree of repugnance exists between the two provisions than is perceived by the commission. We do not read the suspension provisions as granting to the commission a guaranteed respite in which to ponder the intricacies of the rate case. Rather, the commission is merely granted the power to suspend the implementation of proposed changes but *"not for a longer period than* six (6) months," or if necessary *"not for a longer period than* three (3) months" beyond the initial 6 months. This limiting language is to be contrasted to the imperative language of the other provision which directs that "[w]ithin ninety (90) days * * * the commission *shall* make such order" as may be required to implement its decision with respect to the proposed rate changes.

It is our view, therefore, that these two provisions can and indeed were, no doubt, intended to operate harmoniously. The sentence which intercedes between the two allegedly competing provisions of §39-3-11 mandates that all proceedings shall be conducted expeditiously and with a minimum of delay. It is apparent, therefore, that the General Assembly perceived that utility rate cases are affected with a public interest and that speedy deliberation of such cases is helpful to that interest. This, of course, bears out the declaration of policy embodied in §39-1-1 that "the businesses of * * * operating water works and furnishing supplies of water * * * are affected with a pub-

lic interest." We, therefore, feel constrained to construe the 90-day provision in that same light insofar as it was obviously conceived as a precautionary measure designed to bring these matters to speedy conclusions.

Pursuant to our duties to give full effect to all parts of a statute whenever possible and to construe statutes consistently with the Legislature's intent, we hold that §39-3-11, with respect to the 90-day provision, is a mandatory statute, requiring the commission to come forth with a decision and order within 90 days of the completion of a rate hearing. We believe that this mandate obtains even in the event that the whole 90 days passes prior to the expiration of any outstanding suspension order.

We turn now to an examination of the chronology of events in the instant case in the light of the foregoing principles. The first suspension order issued by the commission on July 15, 1974, was to be effective for not more than 6 months after August 1, 1974, the effective date of the company's proposed changes. The commission conducted its hearing on the matter and completed same on October 16, 1974.[1] No decision and order was issued until April 30, 1975, which date is precisely 9 months after the effective date of the company's proposal. The commission claims to have been entitled to use the entire 9-month period because it issued 6-month and 3-month suspension orders respectively on July 15, 1974 and February 3, 1975.

It is patently obvious that, according to our reading of

---

[1]The statute, §39-3-11, provides, of course, that the 90 days during which the commission may prepare and issue its order begins to run upon "the completion of any [rate] hearing." This case does not raise the issue of when the hearing is completed and we do not, therefore, decide that question herein. With the benefit of perfect hindsight, however, we have no difficulty, in the present case, in fixing the completion of the hearing on October 16, 1974. The hearing was convened and adjourned that day, and no further testimony was taken between that time and the issuance of the decision and order on April 30, 1975.

§39-3-11, the commission is incorrect in this latter assertion. They were required to have come forth with a decision and order within 90 days of the completion of the October 16, 1974 hearing. This would indicate that such decision and order should have been issued on or before January 14, 1975. The commission plainly breached its duty under §39-3-11 and thereby forced the company to operate under the yoke of its old rate schedule from January 14, 1975 until April 30, 1975. That these rates had become confiscatory was conceded by the commission in its decision and order.

Furthermore, because the hearing was completed and the 90 days in which to issue the decision and order expired entirely within the initial 6-month suspension, the commission could claim no entitlement under §39-3-11 to order an additional 3-month suspension of the company's proposed changes. This is so because §39-3-11 permits invocation of the 3-month provision only in the event that the hearing and/or investigation has not terminated by the end of the initial 6-month suspension. Because the instant facts do not present such a situation we are not concerned with whether the commission's (or anyone else's) failure to include the February 3, 1975, suspension order in the record destroys the efficacy of said order. We, therefore, do not reach or decide any issues raised by the commission's motion to correct the record.

The only question remaining for our consideration under this issue is the exact nature of the remedy to which the company is now entitled. The resolution of this problem inheres in the nature of the transgression that the commission has committed by withholding their decision and order for more than 6 months. The Public Utilities Commission is a creature of statute and, as such, it possesses only those powers, duties, responsibilities and jurisdiction conferred upon it by the General Assembly. *West-*

*ern Pennsylvania Water Co.* v. *Commonwealth,* 10 Pa. Commw. 533, 538, 311 A.2d 370, 373 (1973). When this tenet of law is combined with the foregoing interpretation of the various pertinent provisions of §39-3-11 and applied to the instant case, it becomes clear that the commission had the power to suspend the company's filing for 6 and 3 months respectively but that this power was subject to its duty to issue an appropriate order within 90 days of the completion of its hearings. Thus, having been derelict in its duty to issue a timely order, the commission forfeited its power to further suspend the company's filing until such time as it came forth with the statutorily required order.

We believe it is consistent with both the public interest and the company's entitlement to a just and reasonable return to require that the company shall forthwith resubmit their filing of June 24, 1974, with such revisions as may be necessary to permit it to collect, by reasonable means, those changed rates retroactively for the period of January 14, 1975 to April 30, 1975, the date of the decision and order. Such retroactive charges shall be in addition to the charges that have been and shall be collected in conformity with the April 30, 1975 decision and order.[2]

---

[2]It is to be emphasized that utility companies are permitted to collect rates retroactively only in very limited circumstances. In the case at bar the company shall be permitted to execute a deferred collection of rates that, by virtue of the commission's dereliction of its statutory duty, became presently due 90 days after the completion of the October 16, 1974 hearing. This is to be contrasted with the situation which arose, for example, in *New England Tel. & Tel. Co.* v. *Public Util. Comm'n.,* 116 R.I. 356, 358 A.2d 1 (1976), where the utility company sought to recoup retroactively those revenues lost during the pendency of this court's review of an erroneous commission decision and order. To have granted the latter request would have violated the rule that rates are exclusively prospective in nature. *Compare Democratic Central Comm.* v. *Washington Metropolitan Area Transit Comm'n.* 436 F.2d 233, 236 (D.C. Cir. 1970) *with In re New England Tel. & Tel. Co.,* 131 Vt. 310, 315-17, 305 A.2d 598, 601-02 (1973).

## II

Although the commission studied the company's proposal for a full 6 months after the public hearing, the company has found cause to dispute nearly every portion of the decision and order that grew from those efforts. Generally, the company objects to certain adjustments made by the commission to operating revenues and expenses and to the rate of return.

The guidelines by which this court decides substantive issues in rate cases are set forth in *Rhode Island Consumers' Council* v. *Smith,* 111 R. I. 271, 277-78, 302 A.2d 757, 762-63 (1973). It is with express reference to these guidelines that the following issues are considered.

### 1. *Revenue Adjustment for Increased Sales*

In adjusting the test-year operating revenues to arrive at the pro forma figure for that category, the commission added "* * * $23,700 representing a 2% increase which is considered a normal based on prior years experience with this Company." The company contests this finding on two grounds. First, it is asserted that, while such an adjustment may have a sound theoretical basis, it is founded, in this case, upon the unsubstantiated assumption that a 2 percent increase in revenues will increase the company's return beyond set limits. Second, it is alleged that the 2 percent does not reflect the company's actual past experience and that in the previous 3 years, increases of 1.3 percent per annum were realized.

We have held on numerous occasions that the commission must facilitate this court's appellate role by setting forth sufficiently the findings and the evidentiary facts upon which its decision rests. We will not speculate thereon nor search the record for supporting evidence. *Rhode Island Consumers' Council* v. *Smith, supra* at 278, 302 A.2d at 763. In the instant case, the projected 2 percent increase in revenues recited by the commission is sup-

ported by nothing more than the assertion that this reflects past experience. Without facts to corroborate this finding or references to places in the record where such facts may be found, we cannot fulfill our function of deciding whether the commission's decision was lawful and reasonable in this respect. *Town of Jamestown* v. *Kennelly,* 81 R. I. 177, 180-81, 100 A.2d 649, 651 (1953).

It is not our function to decide which version of the facts is the correct one. Therefore we will remand this portion of the case to the commission in order to enable that body to fulfill its obligation in a supplemental decision. *United Transit Co.* v. *Nunes,* 99 R. I. 501, 504-05, 209 A.2d 215, 217-18 (1965).

## 2. *Amortization of Standpipe Maintenance*

In its filing, the company proposed to amortize its expense in maintaining standpipe over 7 years. This proposal was rejected by the commission which reduced the annual expenditure for such maintenance by amortizing the periodic maintenance expense over 10 years. Nothing is offered in the decision and order in the way of evidentiary facts, or reasons to support this conclusion. Thus there is no sufficient basis upon which this court may assess the lawfulness or reasonableness of the decision in this respect. Although the commission's brief makes reference to testimony which would tend to support the 10-year amortization plan, we do not base our conclusion upon briefs but upon the commission's report and order. The reason for requiring that the commission set forth its findings with some degree of specificity is as much to protect the rights of the interested parties as it is to enable this court to render decisions on the lawfulness and reasonableness of commission decisions. If we were to base our considerations upon facts identified in a brief but not in the decision, we would, in effect, be according the brief a status not unlike that of a supplemental decision.

If the commission is not required to fulfill its duty in the first instance, that is, in the decision and order, it would be unfair to the parties whose rights hang in the balance.

3. *Rate Case Expenses to American Water Works Service Co.*

The company's original filing contained an account for rate case expense which, in turn, included a $19,000 expense to the company's affiliate the American Water Works Service Company (the service company). The commission, claiming to have had "no proof" of the company's expenses in this regard, disallowed the bulk of the proposed sum, and substituted in its place an allowance of $8,500. No further justification was offered for this finding.

The commission, in its brief, defends its action by stating that it chose merely to implement the better of two educated guesses. It claims that, insofar as the company had failed to sustain its statutory burden of showing that its proposed rate increase was necessary in order to obtain a reasonable compensation for its services, §39-3-12, its disallowance of all but $8,500 of this account was justified.

While the burden is indeed upon the company at the hearing to justify a rate increase, the commission's burden is to sufficiently set forth the evidentiary facts upon which its decision rests. It bears repeating that we will not speculate as to the existence of such facts nor will we conduct our own search of the record therefor. *Rhode Island Consumers' Council* v. *Smith, supra* at 278, 302 A.2d at 763. One "educated guess" does not serve to displace another. While the commission may have been amply justified in concluding that the company had failed to sustain its burden of proof, this constituted no excuse for the commission to shirk its own duty. The commission's findings must be fairly and substantially supported by

legal evidence and sufficiently specific to enable this court to ascertain if the facts upon which they are premised afford a reasonable basis for the result reached. *Id.* at 277, 302 A.2d at 762. If it is found that it is impossible to verify the entirety of the company's proposal, then the commission would be justified in allowing only so much of it as is supportable by legal evidence. In the instant case, the commission only executed the first half of this two-stage decisional process. Its conclusion that $8,500 was a sufficient amount to cover rate case expense to the service company finds no apparent support in the record. This issue is therefore remanded to the commission for supplemental or additional decision.

4. *Management Fees*

Both the service company and the company are subsidiaries of the American Water Works Company (American). The service company, as its name implies, provides sundry services, including management services, to the several operating utilities that are within American's corporate family. The operating utilities are charged for these services and such charges are included as a part of the operating utilities' cost of service and collected from the utilities' customers through the rates they pay.

In the present case, the company proposed to collect an annual amount commensurate with the $72,691 that was charged by the service company as management fees for the test year. Citing the fact that the company's schedule of these expenses afforded "* * * no way of determining whether Bristol and its rate payers received $72,-691 of value" for their money, the commission apparently chose to estimate management fees by averaging the fees paid during the 3 years prior to the test year resulting in a downward adjustment of some $13,000.

The commission is entitled to the benefit of those factual determinations that may be fairly and reasonably im-

plied from its language and its actions. *United Transit Co.* v. *Public Util. Hearing Bd.,* 96 R. I. 435, 445, 192 A.2d 423, 429 (1963). In the case presently before us, we must imply from the relevant portion of the decision and order that the commission felt that, because American derived some benefit from services which were entirely paid for by the company and its rate payers, the evidentiary value of the figures presented by the company had been undermined. Absent any allegations to the contrary by the company, we must further imply that the amount deducted from the proposed account for management fees bore a direct, empirically valid relationship to the amount of benefit actually conferred upon American.

From the face of the decision and order, however, it is impossible to determine whether the final figure employed by the commission represents an amount directly proportional to the benefit derived by the company from the services rendered or whether it is an average of the previous 3 years' management fees. Both methodologies are described by the commission in relation to this item but, in the final analysis, it remains unclear if one or both methods constitute the derivation of the ultimate amount used. Instead of speculating about the basis for this finding, we remand this portion of the report and order for clarification and amplification. *Rhode Island Consumers' Council* v. *Smith, supra* at 290, 302 A.2d at 769.

## 5. Cash-Working Capital

In the instant case, the company calculated its proposed cash-working capital as one-eighth of total maintenance and operating expenses.[3] The company complains in its

---

[3]This device of using one-eighth of the company's maintenance and operating expense as a cash-working capital figure is the virtual equivalent of the 45-day "rule of thumb" rejected by this court on at least two prior occasions. *New England Tel. & Tel. Co.* v. *Public Util. Comm'n,* 116 R.I. 356, 385, 358 A.2d 1, 18 (1976); *Rhode*

brief that its working capital allowance was inexplicably and unjustifiably reduced from $72,483 to $70,209.

It is patently obvious that, in arriving at the latter figure, the commission merely persisted in the mutually agreed-upon method of using one-eighth of what had become a somewhat diminished account for maintenance and operating expenses. That is, the prior disallowance by the commission of certain operating expenses resulted in a proportionally smaller working capital allowance.

However, because several of those commission findings have been found herein to be lacking in evidentiary support and remanded for reconsideration, the cash-working capital allowance is likewise remanded for recalculation in the light of the commission's supplemental decision regarding maintenance and operating expenses.

### 6. *Tax Expenses*

In its brief, the company alludes to certain adjustments made by the commission to various tax expenses. The only sentence in the brief regarding this matter reads, in its entirety, as follows:

> "In the area of taxes the Commission makes unexplained adjustments to payroll and gross earnings taxes resulting in a reduction in tax expense of $1,420."

No reference is made as to the source of the figures upon which this allegation of error is based and cursory examinations of the commission's and company's charts and figures do not reveal their derivation.

Rule 16(a) of this court's Rules of Appellate Procedure provides that where the disposition of a party's claim requires an examination of the evidence by this court,

---

*Island Consumers' Council* v. *Smith,* 111 R. I. 271, 289, 302 A.2d 757 769 (1973). If there are circumstances, in this case, which mitigate against our usual insistence on the production of legal evidence as the "probative indicator" of working capital requirements, such should be clearly set forth in a supplemental decision on this issue.

said party "* * * shall specify in his brief the leading facts which he deems to be established by the evidence, with a reference to the pages of the record and the appendix where the evidence of such facts may be found * * *." Sup. Ct. R. 16(a). It is provided further that if a party fails to provide such references, the evidence relied upon will ordinarily be disregarded.

It is our belief that the company, petitioner herein, has failed to adequately apprise us of the evidence upon which it relies in this particular matter. It is our view, therefore, that this point has, in effect, been neither briefed nor argued and is deemed to be waived. *Walmac Co.* v. *Zurich Ins. Co.*, 114 R. I. 410, 417-18, 333 A.2d 686, 690-91 (1975).

### 7. *Rate of Return*

The final issue raised by this petition is whether the commission, by fixing the rate of return at 8.0 to 8.2 percent, has denied the company the opportunity to earn a fair and reasonable return on the value of property devoted to public service. The commission's conclusion in this regard was expressly based upon its finding that the quality of service provided by the company was seriously deficient. This finding was, in turn, based upon evidence that, among other things, the water quality had previously been so poor that in 1974 the Health Department had considered ordering the company's customers to boil all drinking water. The commission held that not only the cost of capital but the efficiency of operation and adequacy of service are valid considerations in setting a rate of return. *See Re Citizens Util. Co.*, 1 P.U.R. 3d 244, 246-47 (Cal. P.U.C. 1953); Nichols & Welch, *Ruling Principles of Utility Regulation*, Rate of Return at 307-10 (Supp. A. 1964).

It is the company's position that the commission has wrongfully disregarded its witness' testimony that a re-

turn of at least 9.25 percent was necessary to attract needed capital. The company argues also that the very need to raise the quality of service through plant improvement accentuates the concomitant need to attract capital at this point in time.

We cannot accept the company's view that the quality of service provided by it presently or during the test year should not have a bearing on the amount the customers will have to pay for those services in the immediate future. Our view in this regard is heavily influenced by the clear statutory directive to this and other utility companies "to furnish safe, reasonable and adequate services and facilities." G.L. 1956 (1969 Reenactment) §39-2-1, as amended. Because of the view we take of this particular case, however, we expressly reserve decision as to the proper consideration which may go into a finding that the quality or adequacy of service should be reflected in a utility's rate of return.

It is clear from the commission's decision and order and from the hearing exhibits, that, at the time this case was taken under consideration, the company had initiated a plant improvement program specifically designed to upgrade its quality of service. The commission's own expectation in April 1975 was that said modifications were to have been completed by May 1975. The fact that the planned improvements might by now be completed and in operation warrants a remand of this issue for reconsideration in this light. Although water quality might well have been abysmally poor when the evidence in this case was received by the commission in 1974, intervening improvements, if any there have been, might justify a reconsideration of the allowable rate of return. It is our prerogative under §39-5-4 to remand these matters with such mandates as law or equity shall require.

In view of the fact that we have deemed it necessary

herein to remand this rate case for extensive reconsideration of other issues, we feel that no great injustice or inordinate delay will result if we require reconsideration of this issue as well. Accordingly, this portion of the case is remanded to the commission for supplement or additional decision.

### Conclusion

The records certified to this court are ordered returned to the commission. The commission should thereupon reconsider the present record as supplemented by such further testimony as shall be deemed necessary. It should then make further findings and issue a supplemental decision and amended order in harmony with this opinion. Any party thereafter dissatisfied may, by motion filed in this court within 7 days following the commission's action, bring the matter before us for further consideration. Jurisdiction for the review of the commission's supplemental decision and amended order is reserved by this court.

*Coffey, McGovern and Novogroski, John G. Coffey, John G. Coffey, Jr.,* for petitioner.

*Julius C. Michaelson,* Attorney General, *R. Daniel Prentiss,* Special Asst. Attorney General, for respondent.