BRISTOL & WARREN GAS COMPANY,

v.

Edward F. BURKE et al.

Nos. 79–314–M.P., 80–75–M.P.

Supreme Court of Rhode Island.

Dec. 9, 1981.

Coffey, McGovern, Noel & Novogroski, John G. Coffey, Jr., W. Kenneth O'Donnell, Providence, for petitioner.

Dennis J. Roberts, II, Atty. Gen., John R. McDermott, Sp. Asst. Atty. Gen., for respondents.

## OPINION

MURRAY, Justice.

These petitions for certiorari, filed by Bristol & Warren Gas Company (the company) under G.L.1956 (1977 Reenactment) § 39–5–1, have been consolidated for review pursuant to a motion by the company. The petitions challenge the decisions and orders of the Public Utilities Commission (the commission), which dismissed the company's request for rate relief and which permitted the Division of Public Utilities and Carriers (the division) to bill the company for expenses incurred in that proceeding.

On December 1, 1978, the company filed a proposed rate increase (docket No. 1395) with the commission. The effective date of the proposed rates was suspended by the commission for a period of five months beyond December 31, 1978, and notice of the hearing was published and mailed to inter-

ested parties. The hearing on this matter (hereinafter, the rate case) was about to commence as scheduled on April 16, 1979, when the division moved to suspend the proceedings, pending the outcome of an investigation into the company's alleged noncompliance with past commission orders regarding accounting practices and gas-leak repair policies. The commission granted the division's motion and a separate docket number (No. 1395A) was assigned to this new proceeding (hereinafter, the noncompliance case). Hearings on the noncompliance case began on April 18, 1979, and concluded on July 12, 1979. Meanwhile, the commission had suspended the effective date of the proposed rates for an additional three months (through August 31, 1979).[1]

The commission's decision and order, issued on August 10, 1979, did not grant the division's request that a receiver be appointed for the company. However, on the basis of the record in the noncompliance hearings, the commission dismissed the company's rate case. The commission justified this action by asserting that it had always intended to merge the two dockets and that the record in the noncompliance case was therefore an adequate basis for the dismissal of the rate case.

On January 8, 1980, the division, pursuant to G.L.1956 (1977 Reenactment) § 39–1–26, as amended by P.L.1980, ch. 73, § 1,[2] billed the company $10,201.34 for expenses incurred as a result of the hearings. The company appealed this matter to the commission, and on February 14, 1980, the commission ruled that the division had acted properly in billing the company.

Although the company challenges the commission's decisions on several grounds, one issue—the appropriateness of the commission's dismissal of the rate case—is dispositive. The dispute on this point centers on the commission's merger of the rate case and the noncompliance case.

The company claims that the rate case and the noncompliance case were, in fact, separate proceedings. The last-minute merger was an attempt by the commission to disguise the fact that it had, in reality, dismissed the company's request for rate relief without a hearing.

The division urges that the assignment of different docket numbers to the two matters was simply a procedural convenience, a record-keeping device, to avoid confusion. In support of this argument the division directs our attention to the following language in the commission's decision of August 10, 1979, entitled "Docket No. 1395 Also Encompassing 1395A": "The commission always clearly intended·that the record of 1395A would be a part of the Docket 1395 rate case consideration."

■ The record clearly shows, however, that the rate case was suspended so that the noncompliance case could be dealt with first. The new proceeding was explicitly designated a "separate docket" by the commission and the subsequent·hearings were in fact devoted to an investigation of whether the company's accounting practices and gas-leak repair policy complied with past commission orders. It is clear that the suspended rate case hearing was never resumed and the commission's belated merger did not alter the fact that the company's request for rate relief had, in effect, been dismissed without a hearing.

Such a result is clearly prohibited by the due-process guarantee of the United States Constitution. The commission's action also represents a significant departure from its statutory duty. General Laws 1956 (1977 Reenactment) § 39–3–11 provides that "[w]henever the commission receives such notice of * * * [rate] changes proposed to be made in any schedule filed under the provisions of § 39–3–10, the commission shall hold a public hearing and make inves-

1. The effective date of a rate change may be suspended by the commission for a total of eight months. General Laws 1956 (1977 Reenactment) § 39–3–11, as amended by P.L.1977, ch. 236, § 2.

2. Section 39–1–26 provides that a public utility company that proposes a rate increase is responsible for the hearing-related expenses incurred by the commission and by the division.

tigation as to the propriety of such proposed change or changes." In addition to recognizing the constitutional significance of a hearing in these matters, the provisions of § 39–3–11 are of obvious practical value in that they ensure that the commission will have the opportunity to examine the company's cost-of-service figures and their relationship to the rate structure. *See Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, R.I., 396 A.2d 102, 106 (1979).

In the case before us this vital step was never taken. Under these circumstances a proper adjudication of the rate case was impossible, and the absence of a record renders us powerless to determine on review whether the dismissal of the rate case was warranted. We have often stated that factfinding is the commission's role:

"[O]urs is to determine whether the commission's decision and order are lawful and reasonable and whether its findings are fairly and substantially supported by legal evidence and sufficiently specific to enable us to ascertain if the facts upon which they are premised afford a reasonable basis for the result reached." *Rhode Island Consumers' Council v. Smith*, 111 R.I. 271, 277, 302 A.2d 757, 762 (1973).

*See Rhode Island Consumers' Council v. Smith*, 113 R.I. 384, 388, 322 A.2d 17, 20 (1974); *Kilday v. Victoria*, 111 R.I. 488, 489, 304 A.2d 43, 43 (1973); General Laws 1956 (1977 Reenactment) §§ 39–5–1 and 39–5–3. Hence, it is impossible for us to perform our assigned function in the matter before us, and we shall not speculate on the propriety of the commission's decision and order. "One 'educated guess' does not serve to displace another." *Bristol County Water Co. v. Public Utilities Commission*, 117 R.I. 89, 101, 363 A.2d 444, 451 (1976). *See Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, R.I., 396 A.2d 102, 106 (1979); *United Transit Co. v. Nunes*, 99 R.I. 501, 504, 209 A.2d 215, 217 (1965).

We shall therefore remand this matter to the commission for a hearing on the rate relief requested by the company on December 1, 1978. The relief, if granted by the commission, will be calculated for the period between the date the proposed rates would have gone into effect and the date of the next rate increase granted by the commission.[3]

This court is mindful of the rule that rates are exclusively prospective in nature. *Narragansett Electric Co. v. Burke*, R.I., 404 A.2d 821, 827 (1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); *Narragansett Electric Co. v. Burke*, R.I., 381 A.2d 1358, 1364 (1977), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 63 (1978); *New England Telephone & Telegraph Co. v. Public Utilities Commission*, 116 R.I. 356, 388, 358 A.2d 1, 20 (1976). We have also held, however, that rates may be collected retroactively when, as in this case, the commission has been remiss in its statutory duty. *Bristol County Water Co. v. Public Utilities Commission*, 117 R.I. at 98 n.2, 363 A.2d at 449 n.2. *See Narragansett Electric Co. v. Burke*, R.I., 404 A.2d at 827 n.7.

■ Our decision remanding the rate case is dispositive of the petition contesting the company's assessment for hearing expenses. Section 39–1–26 provides that a company requesting rate relief is responsible for hearing-related expenses. In the instant case, however, the required formula is incomplete. The company did submit a proposed rate increase, but the "investigation or hearing of such proposal by the commission and the division," *Id.*, did not take place. The commission's decision on this matter is accordingly reversed.

For the reasons stated above, the petitions for certiorari are granted, the orders of the Public Utilities Commission are quashed, and that portion of the case relat-

---

**3.** The commission had suspended the rate increase for the total eight months permitted by § 39–3–11. It is therefore undisputed that if the commission had not dismissed the case, the rate increase would have automatically gone into effect on September 1, 1979. The division indicated in its brief that the next rate increase granted by the commission was on July 14, 1980.

ing to the petitioner's request for rate relief is remanded to the commission for a hearing in conformity with this opinion.