## PROVIDENCE GAS COMPANY

### v.

### Edward F. BURKE, Administrator, Division of Public Utilities and Carriers.

### No. 81–479–M.P.

Supreme Court of Rhode Island.

July 28, 1982.

Reargument Denied Sept. 9, 1982.

Hinckley & Allen, Michael P. DeFanti, Providence, for petitioner.

Dennis J. Roberts, II, Atty. Gen., John R. McDermott, Sp. Asst. Atty. Gen., for respondent.

## OPINION

KELLEHER, Justice.

This is a statutory certiorari proceeding in which the Providence Gas Company (Providence or the company), by invoking the provisions of G.L.1956 (1977 Reenactment) § 39–5–1, asks that we quash an order and decision of the Public Utilities Commission (the commission) dismissing the

company's May 29, 1981 application for an increase in rates [1] because of its alleged failure to comply with the commission's Rules of Practice and Procedure.

The dismissal came after a hearing on a motion to dismiss the company's application which was filed by the Division of Public Utilities and Carriers (the division). In seeking the dismissal, the division relied on part two of the commission's rules, which in its pertinent portions details the data and information that are to accompany any application for an increase in rates. As part of its documentation, the company had submitted financial information concerning a test year that began on July 1, 1980, and ended on June 30, 1981. The information consisted of data relating to the company's actual operations for the first eight months of the test period and projected data for the final four months of that period. The division's dismissal motion was based on its contention that the test year employed by the company violated section 2.5 of the commission's rules because, in the division's view, this section requires any and all rate filings to be accompanied by data encompassing a historic test year.

The selection of a test year plays a significant part in any public-utility rate case. The essence of the test-year method is the correlation of revenues, expenses, and assets (rate base) [2] over a selected period, usually twelve months. *See Rhode Island Consumers' Council v. Smith*, 111 R.I. 271, 278, 302 A.2d 757, 763 (1973). This period is examined on the theory that the revenues, expenses, and rate-base figures during that period accurately reflect the utility's present financial situation and fairly predict the company's future performance. *Boston Edison Co. v. Department of Public Utilities*, 375 Mass. 1, 24, 375 N.E.2d 305, 321 (1978). The historical-test-year concept evolved during a time when it was assumed that actual results from such past period of operations would be sufficiently representative of the future and would thereby provide a reliable testing vehicle for proposed rates.

This assumption began to come under a cloud of doubt during our recent inflationary times when there has been an unprecedented demand for goods and services. *See* Note, *The Use of Future Test Year In Utility Rate-Making*, 52 B.U. Law Rev. 791, 794 (1972). This period of rapid inflation has caused some individuals to doubt the reliability of a retrospective and possibly obsolete test year. One approach has been an effort to use a more current test period. Some have experimented with a test year that consists of six months of actual experience and six months of estimated experience at the time the request for rate relief is filed. Others have gone further and resorted to a test year in the future based entirely on projections and estimates. Jones, *Cases and Materials on Regulated Industries* 163 (2d ed. 1976).

In granting the division's motion, the commission [3] rejected any notion that its rules mandate the submission of a historical test year rather than one based, in whole or in part, on a prognostication regarding the future. Nevertheless, the commission, in endorsing the division's conclusion, if not its reasoning, noted that the company had violated commission rules in that the rule in question reflected the commission's long-standing policy that a rate application must include actual financial data for a recent twelve-month period.

---

1. The application sought a change in rates that would have increased the company's annual revenues by $12,349,000. The increase was to become effective on July 1, 1981. On June 30, 1981, the commission, acting pursuant to G.L. 1956 (1977 Reenactment) § 39-3-11, as amended by P.L.1977, ch. 236, § 2, entered an order suspending the proposed increase for a period of five months beyond the July 1 date.

2. "Rate base" is the utility's total investment in, or the fair market value of, the used and useful property necessarily devoted to the rendering of the regulated service. *Rhode Island Consumers' Council v. Smith*, 113 R.I. 384, 387, 322 A.2d 17, 19 (1974).

3. About one month before the commission conducted its hearing on the dismissal motion, the company had replaced its four-month estimate with the period's actual experience.

Section 2.5 of the rules states that whenever a utility presents an adjustment to its test-year data, the utility must justify the adjustment by detailing the reasons for the adjustment and the manner in which the adjustment was calculated, as well as by producing the work papers and calculations supporting the change. The commission based its dismissal action upon the language of sec. 2.5(a), which is entitled "Adjustments for known and measurable Changes" and reads as follows:

"Since a test year is to be based upon the experience of a recent twelve-month period, it must be adjusted to reflect normal conditions for a typical future year."

The commission, after disclaiming any notion that its rules dictated the submission of a historic test year, observed that "it seems clear to us that the Rules, especially section 2.5(a), *do* require the submittal of data reflecting the actual experience of a recent twelve-month period on which to base a test year, whether historic or future." However, the commission, before it commented on the clarity of the language found in sec. 2.5(a), had conceded that "some of the phrasing within the Rules" seemed to suggest the use of a historic test year.

■ With all deference to the commission, we are of the belief that sec. 2.5(a) is ambiguous. Its language appears to be aimed at the use of a historic test year and the need to update the results of such test year. In fact, the court in *Commonwealth v. Virginia Electric And Power Co.*, 211 Va. 758, 771, 180 S.E.2d 675, 685–86 (1971), remarked that a regulatory body, in fixing the rates for the future, "should not be blind to the future. It may adjust the results of the test year by allowing for known changes to make the test year representative of the future." The court's last sentence is strikingly similar to the language found in sec. 2.5(a).

Furthermore, we would point out that there is not one word in either sec. 2.5 or sec. 2.5(a) which would inform an applicant that data reflecting the actual experience of a recent twelve-month period are to be submitted at the time of the filing rather than be presented at some subsequent occasion. In fact it is likely that an applicant would reasonably reach a contrary conclusion because the rule speaks only in terms of specific information that must be submitted in the event an applicant chooses to present adjustments to its test-year data. If the commission desires such updated information based on the most recent twelve-month period to be submitted at the time of initial filing, it should say so in simple, direct English. Because the requisite linguistic precision is lacking, the dismissal was totally unwarranted.

The next issue to be resolved is that of a remedy. Since the commission has been remiss in its duties, we shall proceed, as we did in *Bristol & Warren Gas Co. v. Burke*, R.I., 439 A.2d 246, 248 (1981), and remand this case to the commission for a hearing on the application for relief which was requested in May 1981. The relief, if granted, will be calculated for the period from March 2, 1982,[4] to the date of the next rate increase granted by the commission.

For the reasons stated above, the petition for certiorari is granted, the order and decision of the Public Utilities Commission is quashed, and the case is remanded to the commission for further hearing in conformance with this opinion.

---

4. The commission had suspended the imposition of the new rates for five months of the eight-month period permitted by § 39–3–11. The company, in acknowledging the commission's power to extend its original extension for an additional three months, asked that any retroactive rate relief be granted for the period beyond March 2, 1982. Our mandate is in conformity with this request.