WILFRED J. RACINE *vs.* DISTRICT COURT OF THE TENTH JUDICIAL DISTRICT *et al.*

JULY 8, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Prohibition.*

The office of a writ of prohibition is to restrain inferior tribunals from the exercise of judicial acts and not to prohibit the action of ministerial officers. Hence, such a writ will not issue to restrain a mayor and chief of police of a city from the enforcement of an ordinance.

(2) *Construction of Statutes.*

In the construction of the different provisions of a statute the court should, if practicable, make such a construction as will cause them to be consistent with each other and give to each a reasonable intent.

*(3)  Construction of Statutes.*

In passing upon the validity of an ordinance of a city enacted under authority of a public statute which confers the licensing power at the discretion of a public official it is not to be assumed that such official in exercising such power will act arbitrarily or otherwise than in the exercise of a sound discretion.

*(4)  Licenses of Motor Buses.*

An ordinance of the city of Pawtucket, adopted under the authority of Pub. Laws, 1263, approved April 24, 1915, which requires a person operating a motor bus to first obtain a license from the city clerk, who is authorized to grant such licenses upon the approval of the chief of police to persons deemed suitable to conduct such business, is valid.

PROHIBITION.    Petition denied and dismissed.

SWEETLAND, J.    This is a petition for a writ of prohibition praying that this court issue its writ prohibiting the district court of the tenth judicial district from taking any further proceedings upon a criminal complaint against the petitioner now pending in said court; in which complaint the petitioner is charged with the violation of a certain ordinance of the city of Pawtucket.

The petition also includes the prayer, that the mayor of Pawtucket and the chief of police of that city be restrained from the direct or indirect enforcement of said ordinance. The office of a writ of prohibition is to restrain inferior tribunals from the exercise of judicial acts and not to prohibit the action of ministerial officers.    In no event should the writ issue "restraining and enjoining" the mayor and the chief of police of Pawtucket "from the direct or indirect enforcement of each and every provision of said ordinance."

The essential allegations of the complaint against the petitioner, now pending in the district court of the tenth judicial district are as follows:    That on the 14th day of June, 1916, the respondent, who is the petitioner here, "did engage in the business of transporting in the city of Pawtucket passengers for hire by means of a motor vehicle, not running on tracks or rails, and operated for the purpose of street transportation similar to that ordinarily afforded by street railways by accepting and discharging passengers along the

route traversed by said vehicle without first obtaining from the city clerk of said city a special annual license for such motor bus." Said complaint clearly seeks to charge the petitioner with a violation of the provisions of Section 1, Chapter 139 of the Ordinances of the city of Pawtucket, approved February 25, 1916. Said section is as follows: "Section 1. On and after the first day of May, A. D. 1916, no person shall engage in the business of transporting in the city of Pawtucket passengers for hire by means of any motor vehicle, not running on tracks or rails, and operated for the purpose of affording a means of street transportation similar to that ordinarily afforded by street railways by accepting and discharging passengers along the route traversed by such vehicle, without first obtaining from the City Clerk of said city a special annual license for each vehicle to be employed by such person in said business, and unless such license for such vehicle is in force. Such vehicle so employed in said business is termed a motor bus, and is not deemed a hackney carriage, but is a vehicle subject to all street traffic regulations so far as applicable and consistent herewith."

In adopting said ordinance the city council of Pawtucket undoubtedly considered that they were acting in conformity with the authority given by Section 1, Chapter 1263 of the Public Laws, approved April 24, 1915; which section is as follows: "Section 1. The city or representative council of each city and the town council of each town by ordinance may provide that no person shall engage in the business of transporting in such city or town passengers for hire by means of any motor vehicle, not running on tracks or rails, and operated for the purpose of affording a means of street transportation similar to that ordinarily afforded by street railways by accepting and discharging passengers along the route traversed by such vehicle, without first obtaining a special annual license for each such vehicle to be employed by such person in said business from the board of aldermen of such city having such board, otherwise from the city council thereof, or from the town council of such town, in which

said business is to be conducted, or from such officer, board or commission therein as the city council, representative council or town council thereof may prescribe. Such a vehicle so employed is hereby termed a motor bus, and shall not be deemed a hackney carriage, but shall be a vehicle subject to all street traffic regulations in any city or town in which it is operated so far as applicable and consistent herewith."

The petitioner contends that said ordinance is invalid. He urges that, in accordance with said Section 1 of the Public Laws, in a city having a board of aldermen, the power to grant the licenses referred to can only be conferred by ordinance upon such board of aldermen. And that the city council of Pawtucket in providing in said ordinance that such license shall be obtained from the city clerk of said city has exceeded the authority given to it by the General Assembly.

The contention of the petitioner is based upon the construction which he gives to the language of said Section 1 of the Public Laws, which provides that the city or representative council of each city and the town council of each town may provide by ordinance that the license in question shall be obtained from the "board of aldermen of such city having such board, otherwise from the city council thereof, or from the town council of such town, in which said business is to be conducted, or from such officer, board or commission therein as the city council, representative council or town council thereof may prescribe." The construction which he gives to the language quoted, in so far as it relates to this case, is, that in cities which have a board of aldermen any ordinance, adopted in conformity with the act, must provide that such license shall be obtained only from the board of aldermen and that an ordinance providing that the license be obtained from such officer, board or commission therein as the city council or representative council may prescribe can be adopted only in a city which does not have a board of aldermen. This construction appears to us to be contrary to

the plain intent of the language and leads to results which we may well assume were never intended by the General Assembly. All of the cities of the State in accordance with their charters have boards of aldermen, except the city of Cranston, which has only a city council. The city of Newport does not have a city council, but does have both a representative council and a board of aldermen. The construction adopted leads to the result that, except as to Cranston, in all the cities of the State, where the size of the city and the great bulk of municipal business would make it particularly desirable that the granting of such licenses should be delegated to an executive officer or commission, the license may be issued only by the board of aldermen; but that in Cranston and in all the towns of the State such licenses may be obtained from the city council or the town council or from such officer, board or commission therein as the city council or town council thereof may prescribe. This construction makes a discrimination between the different cities and towns of the State, which we must assume the General Assembly did not intend as it is a discrimination without reason.

Furthermore, such construction leads to the result that under any ordinance adopted in Newport, which alone of the cities of the State has a representative council, the license should be obtained only from the board of aldermen, because the city has such a board; but also the statute would present the inconsistent provision that an ordinance may be adopted in Newport which will provide that a license may be obtained from such officer, board or commission in Newport as the representative council of that city may prescribe; and the statute contains no limitation or proviso reconciling these inconsistent provisions.

(2) Such unreasonable and inconsistent results arise from what seems to us to be the force which is unwarrantably given to the word "otherwise," as it occurs in the language in question. The petitioner treats that word as the principal disjunctive word in the provision, introducing as an alternative all that follows in the sentence. This is not warranted

by the meaning of the word or the arrangement of the clauses. The word "otherwise" merely puts in the alternative the two clauses which it separates. Its purpose is to indicate that an ordinance in a city having a board of aldermen may provide that the license shall be obtained from said board; but if the condition is otherwise and the city has no board of aldermen then the ordinance may provide that the license shall be obtained from the city council. After this follows the main disjunctive of the sentence introducing a succession of alternative provisions by the word "or," which Webster calls "a coördinating particle that marks an alternative," separating provisions of equal importance. In this view the construction would be that in any event, whether the city has a board of aldermen or not, the ordinance may provide that the license shall be obtained "from such officer, board or commission," as the city council or representative council of the city may prescribe. That is a construction which does no violence to the language of the provision, but conforms with the approved meaning of the words and with their arrangement. Furthermore, it removes the unreasonable discrimination and inconsistency which result from the construction suggested by the petitioner. It is a fundamental rule in the interpretation of the different provisions of a statute, that the court shall, if it be practicable, make such a construction as will cause them to be consistent with each other, and give to each a reasonable intent.

(3) The petitioner also claims that the ordinance is invalid because Section 2 provides that the city clerk of said city, upon the approval of the chief of police, is authorized and may grant such license to individuals, firms or corporations, applying therefor, deemed suitable to conduct such business. He urges that by this provision everything "is left to the unbridled imagination, caprice, discretion or fancy of the city clerk and the chief of police;" and that it is not to be inferred that the legislature intended to vest an unlimited control in an individual. By the terms of the act the General Assembly did provide that such control might vest

in an individual or a board; and the validity of the act of the General Assembly is not now before us. We must infer that the suitability of the person to operate such business and the safety or suitability of the vehicle to be used in it are matters which the legislature intended should be referred to the judgment of the licensing authority whether that be an officer, board or municipal council. We have no right to assume that there will be an abuse of discretion on the part of either the city clerk or the chief of police.

Mr. Dillon in his Commentaries on the Law of Municipal Corporations says, at Section 598: "Many cases are to be found sustaining ordinances prohibiting acts or even the following of trades or occupations without procuring permits which may be issued at the discretion of the council, mayor, or some other city officer or department, and the fact that the dispensing power was apparently conferred without restraint or qualification has been regarded as arising merely from the (4) difficulty of defining in advance upon what conditions the permit shall be given or the dispensing power exercised. It has also been said that it is not to be assumed that the council or officer in exercising the dispensing power will act arbitrarily or otherwise than in the exercise of a sound discretion." *In re Flaherty*, 105 Cal. 558; *Buffalo* v. *Hill*, 79 N. Y. App. Div. 402, *Wilson* v. *Eureka City*, 173 U. S. 32.

We are of the opinion that the petition should be denied and dismissed.

Petition denied and dismissed and restraining order vacated.

*Clarence W. Woolley*, for petitioner.
*E. W. Blodgett*, for respondents.