JAMES B. DANIELS *et al. vs.* MERTIS L. BLAKE.

AUGUST 13, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a bill in equity to enjoin the respondent from interfering with complainants' right in an alleged public way from New Meadow Road to the shore of the Barrington River in the town of Barrington. The cause was heard in the superior court on bill, answer, replication and oral proof and thereafter a decree was entered permanently enjoining respondent "from depositing gravel, stones or fill of any kind" over a certain strip of land referred to

as a right of way. The respondent was also therein enjoined from "in any way interfering with the public use of said right of way, and more particularly with the use of said right of way by the complainants as members of the public." From such decree the respondent has appealed to this court.

In substance her appeal is based on the claim that the decree is against the law and the evidence and the weight thereof. The respondent has briefed and argued those reasons of appeal more specifically under the following points: (1) The evidence shows that title to the disputed strip of land is in her. (2) The evidence fails to prove the existence of a public easement over such strip. (3) The evidence does not establish complainants' alleged right of way. (4) The complainants are not entitled to an injunction against respondent.

It appears from the evidence that New Meadow Road is a highway in the town of Barrington and runs generally north and south. The complainants own and occupy a house and lot on the easterly side of the road. The respondent owns and occupies a tract of land on the opposite or westerly side of the road. The westerly boundary of her land is the shore of the Barrington River in which the tide ebbs and flows. Along the shore there is a wall which extends southerly to a point where complainants contend there is a public way over a strip of land approximately eighteen feet in width running from tidewater easterly to New Meadow Road. Along a portion of the northerly boundary of that strip respondent's wall turns a corner and extends easterly toward New Meadow Road. According to the testimony of complainants, respondent had caused part of this wall to be demolished and the debris thrown over the alleged right of way. The respondent claimed that the strip of land in question was not a public way but a part of her land.

The trial justice deemed the answer to that claim to be the turning point of the case. In deciding that question he stated in his rescript that he was "not satisfied from the testimony and exhibits in this case that title to the disputed

tract is in the respondent nor in the complainants." He then went on to state that he felt "the evidence proves the existence of a public easement; that respondent is interfering with its enjoyment; and that complainants, as members of the public, are entitled to an injunction as prayed for."

The trial justice does not discuss the evidence of respondent's title to the disputed strip in his rescript and hence we cannot discover therefrom why he deemed such evidence to be lacking in probative force. Nor does he indicate what he conceived to be the rule of law which governed her claim of title to such strip. Neither has he stated the principles of law governing complainants' attempt to establish the existence of a public way solely by user. If his unstated conception of the law in each of those respects were correct the only question here would be whether his findings of fact were clearly wrong. However, in that connection we have a situation where the evidence is undisputed. The respondent presented no evidence either to refute complainants' evidence of user or to establish her title but relied for proof of her claim of title on documentary evidence, including her title deeds, which complainants introduced as part of their case. In such circumstances it is well settled that this court is in as good a position as the trial justice to draw inferences from such undisputed evidence. *Picerne* v. *Redd*, 72 R. I. 4.

The documentary evidence shows that the deed from Samuel Miller to Jonas H. Miller, dated March 1, 1865, which was the earliest deed in respondent's chain of title, did not include within its description the disputed strip of land here in question. The complainants rely strongly on such fact to prove that respondent has no valid title thereto. However, in her deed, dated April 28, 1945, from Melvin A. and Susan E. Turner, the description of the granted premises calls for a frontage of 168 feet on New Meadow Road which includes the disputed strip. And in the next two prior deeds in the chain of title, the earlier of the two having been delivered in 1918, the same description appears. There is no

evidence that those prior owners did not claim the full grant contained in their respective deeds. In the absence of such evidence the presumption is that they did so claim. The respondent not only asserted such claim but she acted in harmony therewith when she was first apprised of the fact that complainants were questioning her right to exercise dominion over the disputed strip. Indeed it was her conduct in that respect which precipitated the filing of the instant bill in which complainants are alleging a *public way* over the strip by user. They do not allege title in themselves or in anyone else.

Apparently for more than thirty years prior to the bringing of the bill of complaint against her, respondent and her ancestors in title have had uninterrupted, quiet, peaceful and actual *seisin* and posesssion of the land in question claiming it as their own sole and rightful estate in fee simple. As far as the present record discloses, no one during that period has ever claimed or disputed such seisin. The complainants are the first to assert that respondent is not so seized, but even they do not claim seisin in themselves or any private right in such land. Their claim is simply that a public way by user exists therein which they as members of the public have the right to enjoy and defend against unlawful encroachment.

In the circumstances of the case complainants had the burden of proving those allegations. *Earle* v. *Briggs,* 49 R. I. 6. On our view of the evidence we are of the opinion that they clearly failed to prove that respondent did not have title to the whole tract described in her deed. The mere fact that the deed of Samuel Miller in 1865 did not include the disputed strip does not of itself negative respondent's claim of title thereto. Under her deed and the deeds of her immediate ancestors in title plus their uninterrupted and undisturbed possession, there was prima facie evidence of good and lawful title in her which became conclusive in the absence of evidence to the contrary. Here there was no such contrary evidence. No attempt was made to show

*title* in anyone other than respondent. The complainants' evidence was intended only to support their claim of a public easement of way over the disputed strip.

By virtue of the provisions of general laws 1938, chapter 438, §2, the uninterrupted, quiet, peaceful and actual seisin and possession of lands, tenements or hereditaments under a claim of right for the required period are allowed to give and make a good and rightful title to the claimant thereof. When respondent went into occupation of the premises here under color of title by virtue of her deed, her occupation was not limited to the part of the granted premises actually occupied but extended to the parcel in its entirety. *Dow* v. *Dow*, 243 Mass. 587. There the court said at page 590: "The entry is deemed to be coextensive with the grant upon the ground that it is the intention of the grantee to assert such possession." And the same is true of the occupancy of her immediate ancestors in title under the grant in their respective deeds continuously back to 1918.

Regardless, therefore, of the existence of the wall along the northerly boundary of the disputed strip, respondent and her ancestors in title were in constructive possession of such strip within the bounds described in their deeds. Hence we think that the evidence not only fails to prove absence of title in respondent but on the contrary clearly shows that she has title at least by adverse possession under the statute. This being so we must hold that the trial justice erred in finding otherwise.

But even though title is in respondent there could still be a public way over the disputed strip. Such an easement is an incorporeal right of user and does not depend upon title to support it. In this instance the claim is made that the public easement exists not by grant but by public user for the prescriptive period. In our opinion the evidence of such user is meager to say the least. Aside from evidence of long-continued use by footpassers over the strip to get from the road to the shore, which incidentally by reason of G. L. 1938, chap. 438, §5, cannot establish an easement,

there is no substantial evidence that the strip was used as a public way adverse to the claims of the owners of the title. This court has held that " 'to create a public way by use the proof must show that the use has been general, uninterrupted, continuous and adverse so as to warrant the inference that it had been laid out, appropriated, or dedicated by the proprietors of the adjoining land to the public.' Jones on Easements, Sec. 461; Elliott on Roads and Streets, 3d ed. Vol. 1, Sec. 194. 'An occasional use by a few persons living in the neighborhood without any assertion of public right is not sufficient.' " *Eddy* v. *Clarke,* 38 R. I. 371, 379.

In the instant cause the evidence of use was largely of an occasional kind in that it was more or less existent only in the summer season. For example, complainant James B. Daniels testified that he used the strip to get to and from his boat in the river but that in the off season he pulled the boat up on the shore and left it there. There was some other indefinite evidence of a use by unidentified persons to cart away clams but this also was only occasional. On the whole such evidence seems to indicate that whatever use of the strip was made at such times was merely tolerated or permitted; that there was no general use to constitute a public right; and that no one asserted a claim of public right until these complainants observed that respondent was preparing to fill in the strip by dumping on it gravel, stones and other debris from the demolished wall. When complainants first unequivocally made such claim, respondent promptly proceeded in accordance with the provisions of G. L. 1938, chap. 438, §6, to give them notice in writing of her title to the strip free of any such incumbrance.

In our opinion the admitted friendly relations between respondent and complainants while the latter were openly using the strip to pass to and from the shore and before they asserted the existence of a public easement tends to establish their use originally as merely permissive. We also think that the occasional passing of others to and from

the shore was use of the same kind and not such as was calculated to put the title owner on notice that such passing was an adverse user under a claim of right. "Nothing is more common in Rhode Island than for people to cross land lying along the bay to get to and from the shore, and it would hardly be possible for any occupant of such land to prove title by adverse possession, if such crossings would suffice to interrupt it." *Town of New Shoreham* v. *Ball,* 14 R. I. 566, 571. We think that observation is also pertinent in the circumstances of the instant cause where such passings are being relied on to establish a public easement of way from a public highway to the shore.

It may well be, as the evidence seems to indicate, that such passings over the disputed strip have occurred for as long as the prescriptive period. But unless the evidence also shows that they were adverse in the beginning they cannot avail these complainants in establishing a public easement by prescription. A use originally permissive cannot be converted into an adverse use by a later use and claim of that kind. The law presumes that a use originally permissive continues in the absence of conduct clearly indicating a change. *Tefft* v. *Reynolds,* 43 R. I. 538. And such permissive use cannot ripen into an easement by prescription no matter how long it is continued. *Earle* v. *Briggs,* 49 R. I. 6. Since we deem the evidence of such adverse use here to be lacking in probative force we are of the opinion that the trial justice erred in finding that it proved the existence of a public easement.

Before concluding this opinion we should observe that these complainants, in the absence of a demurrer to their bill of complaint, have been allowed, in effect, to obtain an injunction for the purpose of abating an alleged public nuisance. Assuming that they established by their evidence that the disputed strip was a public way, as they claimed, and that respondent was obstructing it this would unquestionably be a public nuisance. As such it was not abatable in equity by injunction on the complaint of these com-

plainants unless they could show that they thereby suffered an injury peculiar to themselves or some special injury other than that in which all the general public shared alike. *Steere* v. *Tucker,* 39 R. I. 531. That the complainants here made no such showing is clearly undisputed. Neither did they allege in their bill that they had suffered any special injury different in kind and not merely in degree from that suffered in common by the general public by reason of the acts of respondent in obstructing the alleged public easement.

It should also be noted that the claim here made is not of a private easement appurtenant to complainants' realty and it does not appear that any portion of such realty abuts upon the alleged way. See *Trafton* v. *Downey,* 51 R. I. 87. On the contrary it is situated on the opposite side of the highway and in no sense is the alleged way servient to such realty. Therefore there is no question here of the respective rights and obligations of a dominant and servient tenement that might arise if the alleged easement were appurtenant. The instant claim is simply one of interference with an alleged public easement and is the same as if it were a claim of interference with the use of a public highway.

In the above connection it was expressly stated in *Steere* v. *Tucker, supra,* at page 546: "Of course the general use of the highway by the complainant for traveling back and forth thereon is only a part of the general public use, to which everyone is entitled; and if there is any actual encroachment, the complainant suffers no special injury differing either in kind or in degree from that suffered by the general public so far as the general use of the highway is concerned." Under this well-settled rule the evidence in the instant cause does not establish complainants' right to seek an injunction "as members of the public."

The respondent's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with directions to enter a decree denying and dismissing the bill of complaint.

*Wilson, Budlong & Clough, Wilford S. Budlong, Ralph T. Lewis, Jr., George A. Stone,* for complainants.

*Edwards & Angell, William H. Edwards, John V. Kean,* for respondent.