Stanley SLEBODA, Jr. et al.

v.

HEIRS AT LAW OF Rollin A.
HARRIS et al.

No. 83–229–Appeal.

Supreme Court of Rhode Island.

May 2, 1986.

Michael Mellion, Louis B. Rubinstein, Gates Mellion & Rubinstein, Providence, for plaintiffs.

John M. Pelletier, Donald J. Packer, Hogan & Hogan, East Providence, Stephen A. Fanning, Jr., Edwards & Angell, Joseph Palmieri, Palmieri & Carr, Providence, for defendants.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court holding that the right of redemption of the defendants had been foreclosed by the adverse possession of the plaintiffs and also on a cross-appeal by the plaintiffs in respect to the assessment of costs.[1] This judgment was entered following a nonjury trial. We affirm. The facts of the case insofar as pertinent to the appeal are as follows.

The parents of plaintiffs purchased a tract of land in Smithfield at a tax sale in 1950. The tract, then as now, consisted of approximately fifteen acres of heavily wooded, unimproved land. The property had been acquired by Daniel J. and Rollin M. Harris in 1890. No taxes had been paid on the property from 1922 to 1948. As a consequence, the town of Smithfield sold the property in 1950 to Stanley Sleboda, Sr. and his wife, Annie Sleboda, the parents of plaintiffs. A deed to Stanley, Sr. and Annie Sleboda as joint tenants, executed by the tax collector of Smithfield, was duly recorded on July 24, 1950. The validity of the tax sale has not been challenged. The trial justice found that the unimproved, densely wooded tract lacked direct access to anything that could legitimately be classified as a road or public highway. The plaintiffs and their parents as predecessors in title cut trees and gathered firewood on the property two or three times each year between the 1950 tax sale and 1976. The land was sufficiently wild and overgrown so that it was difficult to traverse except on foot or in a 1936 stakebody, ton and a

---

1. The timeliness of defendants' appeal and plaintiffs' cross-appeal is questionable. A judgment was entered on November 5, 1982. Rule 4 of the Supreme Court Rules provides that an appeal be taken within 20 days of the judgment. However, no appeal was taken from this judgment. On January 31, 1983, the November 5, 1982 judgment was vacated by stipulation, and a final judgment was entered. Defendants filed a notice of appeal from that judgment on February 1, 1983. The plaintiffs' cross-appeal was not filed until March 1, 1983. Under Rule 4 of the Supreme Court Rules, the latest date for filing an effective cross-appeal would have been February 21, 1983. However, since these points were not raised by either party, we have decided all of the issues on their merits.

half truck-type vehicle. The surrounding land was similar and was generally used for the gathering of firewood.

Stanley Sleboda, Sr. died in 1956. His wife died in 1971 and devised the property to her children. The plaintiffs were the grantees of the other children of Stanley, Sr. and Annie Sleboda. On December 4, 1975, a certificate of redemption was proffered to the treasurer of the town of Smithfield on behalf of unspecified heirs at law of Rollin Harris. The certificate of redemption was accompanied by the payment of $2,220.27. Receipt was acknowledged by the treasurer for the purpose of redeeming the property. That sum was eventually tendered to and rejected by plaintiffs. Immediately thereafter, a series of quitclaim deeds, purportedly from various heirs of Rollin Harris to defendant Anthony Loffredo, were recorded. Those deeds recited that the consideration was such that no revenue stamps were required. On the same date, Loffredo deeded the property to defendant Maurice Bissonnette, and approximately one month later, Bissonnette deeded the property to defendants Hogan and Delaney who have paid the taxes assessed against the property since that time.

As a result of this attempt to redeem the property, plaintiffs filed an action to quiet title pursuant to the provisions of G.L.1956 (1969 Reenactment) chapter 16 of title 34, requesting that the court determine their title to the real estate and remove any clouds thereon. The plaintiffs asserted in support of their claim that they had been in actual, open, notorious, continuous, and exclusive possession of the property under claim of right for a period in excess of ten years, as required by §§ 34–16–7,–8 and G.L.1956 (1969 Reenactment) § 34–7–1. The trial justice specifically found that from 1950 to 1976, when they were notified by the town treasurer of the purported redemption, plaintiffs and their predecessors "possessed and enjoyed it in the only way that it could be possessed and enjoyed and in a manner that was consistent with the possession and enjoyment of surrounding properties." He further found that plaintiffs' possession and enjoyment was sufficiently exclusive and uninterrupted as to satisfy the requirements of § 34–16–7, which provides:

"Presumption of lost grant by adverse possession.—Open, adverse, exclusive and uninterrupted possession and enjoyment by the plaintiff, or by his predecessors in title or both the plaintiff and such predecessors together of the real estate or his or their interest therein described in the complaint, for a period of at least ten (10) years, shall raise the rebuttable presumption in law and in fact of a lost grant, properly executed and delivered, effective to cure the defect or defects in plaintiff's title, as set forth in the complaint and/or to remove the cloud thereon, as it concerns any party named or referred to in said cause."

No one disputes that plaintiffs and their predecessors in interest did not file a petition to foreclose the right of redemption in the manner set forth in G.L.1956 (1980 Reenactment) § 44–9–25. The parties in their briefs raise a number of issues that may be reduced to three major questions.

## I

CAN THE RIGHTS OF REDEMPTION RECOGNIZED IN G.L.1956 (1980 Reenactment) chapter 9 of title 44 BE EXTINGUISHED BY ADVERSE POSSESSION?

Section 44–9–25 provides a specific method for foreclosure of the rights of redemption of a titleholder whose property has been sold for nonpayment of taxes:

"Petition for foreclosure of redemption.—After one (1) year from a sale of land for taxes, except as provided in §§ 44–9–19 to 44–9–22, inclusive, whoever then holds the title thereby acquired may bring a petition in the superior court for the foreclosure of all rights of redemption thereunder. Such petition shall set forth a description of the land to which it applies, with its assessed valuation, the petitioner's source of title, giv-

ing a reference to the place, book and page of record, and such other facts as may be necessary for the information of the court. Two (2) or more parcels of land may be included in any petition brought by a town, as purchaser of such title or titles, if such parcels are in the same record ownership at the time of bringing such petition * * *."

This is a question of first impression before this court, although we have determined in *Picerne v. Sylvestre,* 113 R.I. 598, 324 A.2d 617 (1974), that the prior record owners of real estate that had been sold for taxes but who remained in possession of the real estate for more than eleven years following a tax sale could extinguish the tax purchaser's right under the doctrine of adverse possession. Consequently, in the case at bar, we are called upon to determine whether the converse result should obtain pursuant to the doctrine of adverse possession. In *Picerne* the court limited its holding to establishing the principle that "the holder of a tax title who procrastinates in foreclosing the right of redemption runs the risk of having his title divested by a successful showing of the requisite adverse possession." 113 R.I. at 602–03, 324 A.2d at 619–20. The question with which we are faced in the case at bar is whether a tax-sale purchaser and his successors in interest may extinguish the right of redemption by adverse possession if continued for the statutory period of ten years. We answer this question in the affirmative.

■ The defendants seem to argue that one who purchases at a tax sale may extinguish the right of redemption only as provided in § 44–9–25 and in no other way. The defendants support this argument by suggesting that the holder of a tax title does not hold adversely to the record titleholder's right to redeem. This rationale was specifically rejected in *Picerne,* in which we held that the tax purchaser receives "an independent grant from the sovereign which bars or extinguishes all former titles, interests and liens not specifically excepted." 113 R.I. at 600, 324 A.2d at

618. Thus this court determined that the collector's deed confers absolute legal title upon the tax-sale purchaser subject only to defeasance by redemption. *Id.* at 600–03, 324 A.2d at 618–19. Such a title is hostile and adverse to all other claimants including the prior record owners.

■ There seems to run through defendants' argument a suggestion that one who enters upon real estate by deed is not entitled to benefit by adverse possession but that adverse possession is designed for the benefit of trespassers who disseise without any claim of title. In support of this argument, defendants suggest that the presumption of a lost grant, as set forth in § 34–16–7, is inconsistent with a recorded title deed. The surface plausibility of this argument is pierced by an examination of the historical background of adverse-possession statutes. Such statutes of limitation extend back to the thirteenth and earlier centuries. 7 Powell & Rohan, *The Law of Real Property,* ¶ 1012, at 91–2 to 91–3 (1984). The first such statute that furnished a pattern for modern American statutes of limitations was that of 21 Jac. I, ch. 16, § § 1, 2 (1623), which provided for the quieting of estates after twenty years of peaceable possession. *Id.* at 91–3 n. 7. Such statutes were not designed solely for the protection of trespassers and tortious disseisors (although such persons may have benefited from the statute of limitations) but were designed to quiet the title of individuals who had acquired title by deed but whose deeds were in some way defective. *Id.* at 91–3, 91–9. In discussing adverse possession, Professor Powell and Dean Rohan speak of one element, "color of title," in instances in which a written instrument that is defective creates only an appearance of title:

"Possession under color of title confers at least two benefits on the possessors. First, actual possession of only a part is treated as constructive possession of the whole area covered by the instrument. Second, the required period of possession

is [by some statutory provisions] shortened.

"The writing relied on to furnish color of title is often a deed. Procedures established for the selling of land for the collection of taxes have been frequently defective in their provisions, and have also been inexpertly applied. The result has been a high vulnerability of tax deeds. Such a deed, even when demonstrably void, has been found to constitute color of title [for purposes of adverse possession]." *Id.*, ¶ 1013, at 91–39 to 91–40.

Similarly, when adverse-possession statutes were first adopted in Rhode Island, the expressed purpose, as stated in the preambles, indicated the intention of the Legislature to confirm titles held under defective deeds. For example, the Public Laws of 1852 at page 219 sets forth "An Act for quieting Possession and avoiding Suits at Law," which contained the following preamble:

"Whereas at the first settling of this state, and for sundry years afterwards, lands were of little or no value, and skilful men in the law were much wanted, whereby many deeds, grants and conveyances were weakly made, which may occasion great contests in law if not timely prevented * * *."

The Legislature then went on to provide for the quieting of title in those who had uninterrupted, quiet, peaceable, and actual seisin for a space of twenty years.

A similar preamble may be found to chapter 148 of the Revised Statutes of 1857, which again provided for the quieting of title of those who hold peaceable and actual seisin for a period of twenty years.

█ We reject the argument that one who enters upon real estate by deed, as opposed to tortious disseisin, may not have the benefit of quieting his title by adverse possession. Indeed, in *Picerne* we clearly held that the rights of the tax-sale purchas-

er and of record title holders in possession could become adverse to each other. We see no reason why the converse should not also be true.

Section 34–16–7 specifically provides that adverse possession for a period of at least ten years "shall raise the rebuttable presumption in law and in fact of a lost grant, *properly executed and delivered, effective to cure the defect or defects in plaintiff's title* * * *." (Emphasis added.) This provision for quieting title, as well as the provisions of § 34–7–1, which provide for conclusive title by peaceful possession under claim of right, create a statutory scheme for the cure and supplying of defects of title to those who have had for the statutory term "uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during [the space of ten years], claiming the same as his, her or their proper, sole and rightful estate in fee simple * * *." Section 34–7–1. This statutory scheme makes no distinctions concerning the type of deed or claim of right under which the parties in possession assert their ownership.

█ We have often stated that it is the obligation of the court, when dealing with statutes *in pari materia*, to interpret the statutes in a manner so as to achieve a harmonious result. *State v. Ahmadjian*, 438 A.2d 1070, 1080–81 (R.I. 1981); *Herald Press, Inc. v. Norberg*, 122 R.I. 264, 271, 405 A.2d 1171, 1176 (1979). In interpreting the provisions of § 44–9–25 with the provisions of §§ 34–16–1, –2, –3, –5, –7 and –8, such a harmonious result is readily achieved. Section 44–9–25 provides for foreclosure of the right of redemption by a tax-sale purchaser at any time after one year from the date of the sale for nonpayment of taxes. This section gives a speedy method of confirming full title in the tax-sale purchaser and extinguishing the right of redemption after only one year from the date of sale. The provisions of § 34–16–1[2]

2. General Laws 1956 (1969 Reenactment) § 34–16–1 in its entirety reads:

"Any person or persons claiming title to real estate, which title is based upon or has

specifically provide for the quieting of a title *"based upon or * * * through a deed of a tax collector or town or city treasurer upon sale of real estate for the collection of taxes, assessments or municipal liens of any kind"* (as well as other types of deeds) coupled with adverse possession for the necessary period as set forth in § 34–16–7. (Emphasis added.) The action brought under § 34–16–1 requires a period of ten years of open, notorious, and adverse possession as opposed to the mere one year required under § 44–9–25. If the provisions of § 44–9–25 were exclusive, it would render the language of § 34–16–1 relating to the deed of a tax collector meaningless and nugatory. Another familiar rule of construction is that we do not interpret legislative enactments as meaningless or nugatory if any other construction is reasonably possible. *See, e.g., Montaquila v. St. Cyr*, 433 A.2d 206, 214 (R.I.1981); *Rhode Island Chamber of Commerce v. Hackett*, 122 R.I. 686, 690, 411 A.2d 300, 303 (1980); *Kingsley v. Miller*, 120 R.I. 372, 376, 388 A.2d 357, 360 (1978); *Town of Scituate v. O'Rourke*, 103 R.I. 499, 509–10, 239 A.2d 176, 182–83 (1968). Consequently, we conclude that the provisions of § 44–9–25, when read together with the provisions of chapter 16 of title 34, allow an early foreclosure of the right of redemption subsequent to one year after the date of the tax sale or the quieting of title by adverse possession if there is an adequate showing of the required elements thereof for a period of ten years subsequent to the commencement of such adverse possession. We therefore hold that the trial justice was correct in his determination that the right of redemption may be extinguished by ad-

verse possession for the statutory period and subject to proof of the statutory conditions.

## II

### DID THE TRIAL JUSTICE ERR IN FINDING THAT PLAINTIFFS HAD PROVEN BY CLEAR AND CONVINCING EVIDENCE ALL ELEMENTS NECESSARY TO ESTABLISH ADVERSE POSSESSION?

■ This court has held that one who claims by adverse possession must establish each of the necessary elements by clear and convincing evidence. *Lee v. Raymond*, 456 A.2d 1179, 1182 (R.I.1983); *Gammons v. Caswell*, 447 A.2d 361, 366 (R.I.1982). In accordance with the mandate of these cases, and in further conformity with this court's opinion in *Sherman v. Goloskie*, 95 R.I. 457, 188 A.2d 79 (1963), the trial justice specifically determined that by clear and undisputed evidence plaintiffs and their predecessors in title cut trees and gathered firewood on the property two or three times each year between the 1950 tax sale and 1976 when they were notified by the town treasurer of the purported redemption. The trial justice went on to find that the nature of the property and the use to which plaintiffs had put it were virtually identical to the nature and use of the surrounding property. The trial justice stated that "given the character of the property, the Court finds that the plaintiffs possessed and enjoyed it in the only way that it could be possessed and enjoyed and in a manner that was consistent with the possession and enjoyment of surrounding

come through a deed of a tax collector or town or city treasurer upon sale of real estate for the collection of taxes, assessments or municipal liens of any kind, or of a sheriff on execution sale, or any deed, grant or conveyance given under judicial proceedings, or otherwise, the validity of which depends upon notice of any kind, may, although his title to said real estate be undisputed, bring a civil action against the person or persons whose title and interest, or either, were sold out under said sale or proceedings, and against

any other persons that may be interested in said real estate because of said sale or proceedings, or the giving of such a deed to determine the validity of his or their title or estate therein, to remove any cloud thereon, and to affirm and quiet his or their possession and title; provided, however, that where a period of redemption is by statute provided in which said real estate passing under any such sale or proceedings may be redeemed, said period of redemption must have expired before the bringing of any such action."

properties." In the light of uncontradicted evidence that these activities took place each and every year from 1950 to 1976 and that during that time there were no signs that the property was being used by anyone other than plaintiffs or their predecessors, the trial justice found, considering the nature of the property and the use to which it could reasonably be put, that plaintiffs' possession and enjoyment was sufficiently exclusive and uninterrupted as to satisfy the requirements of § 34-16-7.

■ The trial justice further found that the possession was open and adverse and therefore sufficiently notorious as to come to the attention of an ordinarily alert owner. In addition, he found that these possessory activities, taken in conjunction with the fact of the published notice of the tax sale that had been given to defendants' predecessors in title and the recording of the deed to Stanley Sleboda, Sr. and Annie Sleboda, considered in conjunction with the payment of taxes each and every year from 1950 through 1975, constituted ample constructive notice of the hostile nature of plaintiffs' claims and of their possession and enjoyment of the property.

■ The trial justice noted a rule recognized in *Daniels v. Blake*, 81 R.I. 103, 108, 99 A.2d 7, 10 (1953), that one who occupies land pursuant to a deed could establish constructive possession of an entire parcel by proof of actual occupation of only a limited part of the granted premises. Thus, the trial justice took into account that constructive possession of this entire tract of land could be established by the evidence of gathering wood periodically upon a portion thereof. *See also* 7 Powell & Rohan, ¶ 1013, at 91-39, 91-43 to 91-44.

It is well settled in this jurisdiction that findings of fact by a trial justice are entitled to great weight and are not to be set aside unless he or she overlooks or misconceives relevant evidence on a material issue or is otherwise clearly wrong. *Finkelstein v. Finkelstein*, 502 A.2d 350, 355 (R.I. 1985); *Dickinson v. Killheffer*, 497 A.2d 307, 312 (R.I.1985); *Joni Auto Rentals,*

*Inc. v. Weir Auto Sales, Inc.*, 491 A.2d 328, 330 (R.I.1985); *Proffitt v. Ricci*, 463 A.2d 514, 517 (R.I.1983); 1 Kent, *R.I. Civ. Prac.* § 52.5 at 384 (1969). Of equal importance in relation to the case at bar, the same principle applies to the inferences and conclusions drawn by a trial justice in respect to ultimate issues of fact derived from the testimony and evidence. *Casey v. Casey*, 494 A.2d 80, 82 (R.I.1985); *In re Randy B.*, 486 A.2d 1071, 1073 (R.I.1985).

In challenging the trial justice's findings of fact "that the plaintiffs have established by a preponderance of the clear and positive evidence that they were in open, adverse, exclusive and uninterrupted possession and enjoyment of the subject property continuously for a period of more than ten years," defendants cite prior adverse-possession cases as though all of such cases could be fitted into a common mold.

In the instant case the trial justice correctly applied the general principles of adverse possession to a wild, overgrown, and relatively inaccessible piece of property that had no access "to anything that could legitimately be classified as a road or public highway." He also took into account the fact of the tax sale, the notice to defendants' precedessors in title, the constructive notice to all claimants of the deed to plaintiffs' predecessors in title, and the payment of taxes for twenty-five years. Putting all of these factors together, he concluded that plaintiffs had met their burden of showing open, adverse, exclusive, and uninterrupted possession and enjoyment of the subject property for the statutory period. In sum, he found that plaintiffs' claim based on the tax deed was hostile to all of the world and particularly adverse to those who claimed a right of redemption. We are of the opinion that his conclusions of law were correct and his findings of fact based upon the uncontradicted and record evidence could scarcely be deemed clearly wrong. Similarly, his inferences and conclusions were solidly based upon the same overwhelming quantum of evidence.

We conclude, therefore, that the trial justice's findings on adverse possession were amply supported by the evidence and are unassailable on review.

## III

### DID THE TRIAL JUSTICE ERR IN DECLINING TO ASSESS THE FEE OF THE GUARDIAN AD LITEM AGAINST DEFENDANTS?

 The trial justice declined to assess the fee of the guardian *ad litem* against the defendants because he was of the opinion that since this action was brought pursuant to the provisions of chapter 16 of title 34, the appointment of a guardian *ad litem* was necessitated by § 34–16–9, which required inclusion of unknown and unascertained claimants whose claims may, indeed, have been adverse not only to the plaintiffs but to the named defendants as well. As in any other ascertainment of costs, discretion is conferred upon the trial justice in apportioning costs. General Laws 1956 (1985 Reenactment) § 9–22–5 specifically provides for the party prevailing to recover costs "except * * * as justice may require, in the discretion of the court." In the circumstances of the case at bar, in declining to assess the fee of the guardian *ad litem* against the defendants, the trial justice certainly did not abuse his discretion.

For the reasons stated, the appeal of the defendants is denied and dismissed, and the cross-appeal of the plaintiffs in respect to the assessment of costs is denied and dismissed, and the judgment of the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court.

BEVILACQUA, Chief Justice, with whom SHEA, Justice, joins, dissenting.

The initial issue raised on appeal is whether the right of redemption granted in G.L.1956 (1980 Reenactment) chapter 9 of title 44 can be defeated by adverse possession. We answer this question in the negative.

The right to redeem property sold at a tax sale has been recognized in Rhode Island since the late nineteenth century. In 1896, the Rhode Island Legislature enacted G.L. ch. 48, § 16, which granted to a recalcitrant taxpayer a period of one year from the time of the tax sale to redeem the property.[3] Although the redemption statute was amended in 1939,[4] the one-year redemption period was maintained until 1946, when the General Assembly enacted new legislation regarding tax sales and redemption. In promulgating § 44–9–21, the General Assembly abolished the one-year redemption rule, opting instead for an indefinite redemption period.

"Redemption from purchaser other than town.—Any such person may so redeem by paying or tendering to a purchaser, other than the town, his legal representatives or assigns, or to the person to whom an assignment of a tax title has been made by the town, *at any time prior to the filing of such petition for foreclosure,* in the case of a purchaser the original sum and intervening taxes and costs paid by him, plus a penalty as provided in § 44–9–19, or in the case of an assignee of a tax title from a town, the amount stated in the instrument of assignment, plus the abovementioned penalty. He may also redeem the land by paying or tendering to the treasurer

---

3. General Laws 1896 ch. 48, § 16 provided that:

"[T]he person who owned any real estate sold for taxes, at the time of the assessment, or any interest therein, his heirs, assigns or devises, may redeem the same upon repaying to the puchaser the amount paid therefor, with twenty per centum in addition, within one year after the sale, or within six months after final judgment has been rendered in any suit in which the validity of the sale is in question: *Provided* said suit be commenced within one year after such sale."

4. General Laws 1938 ch. 32, § 17, as amended by P.L.1939, ch. 695, § 1 provided that:

"The person who owned any real estate sold for taxes, or any interest therein, his heirs, assigns or devises, may redeem the same at any time within twelve months after the date of such sale * * *."

the sum which he would be required to pay to the purchaser or to the assignee of a tax title, in which case the town treasurer shall be constituted the agent of the purchaser or assignee." (Emphasis added.)

It is clear that under the current law, the redemption period is controlled not by the prior owner of the property, but rather by the tax-title holder, for it is he who has the duty to foreclose all rights of redemption to the property once the twelve-month period has lapsed. *Picerne v. Sylvestre*, 113 R.I. 598, 600, 324 A.2d 617, 618 (1974). Our reading of the statute indicates that until the tax-sale purchaser complies with § 44-9-25[5] by petitioning the Superior Court for the foreclosure of all rights of redemption of the delinquent taxpayer, said right to redeem the property remains viable.

In *Pratt v. Woolley*, 117 R.I. 154, 365 A.2d 424 (1976), this court noted that as legislative innovations not recognized at common law, tax sale statutes are to be strictly construed in favor of the owner whose property is sold for nonpayment of taxes. It was stated that:

"The power to sell land for non-payment of taxes is not a common-law power, but arises entirely from statute, and therefore exists only when the conditions prescribed by the statute are fulfilled; and *since such statutes are penal,* and the proceedings under them *ex parte,* summary, executive rather than judicial, and an infringement of the rights of property only tolerated by reason of necessity, *great strictness and exactness in following the law is required in favor of the land owner."* (Emphasis added.) *Id.* at 161–62, 365 A.2d at 429 (quot-

ing 1 Blackwell, *Tax Titles,* § 121 at 117 (5th ed. 1889)).

Although similar issues have been addressed by this court, the instant issue is one of first impression in this jurisdiction. In *Picerne v. Sylvestre,* this court noted that a tax collector's deed is in the nature of an independant grant from the sovereign which bars or extinguishes all former titles, interests and liens not specifically excepted. The title conveyed is absolute, *"subject only to defeasance by redemption."* (Emphasis added.) 113 R.I. at 600–01, 324 A.2d at 618. In that case, although the realty of the prior owners was sold for taxes, the owners did not quit possession of the property for more than eleven years following the sale. On those narrow facts, we held that the holder of a tax title who procrastinates in foreclosing the right of redemption runs the risk of having his title divested by a successful showing of the requisite adverse possession. *Id.* at 602–03, 324 A.2d at 619–20. However, this is not to say that the converse is true, that is, that a tax-sale purchaser may defeat a prior owner's right of redemption by fulfilling the requirements of adverse possession. It is our opinion that the trial justice committed error when he determined that defendant could foreclose plaintiffs' redemption rights by adverse possession. In the past this court has noted both that judicial discretion and intervention in redemption matters is strictly limited and bounded by the precise wording of the statute, *see Pratt v. Woolley,* 117 R.I. at 161, 365 A.2d at 428; *Parker v. MacCue,* 54 R.I. 270, 272, 172 A. 725, 726 (1934), and that any discretion exercised by the trial court must be in favor of the landowner. *Albert-*

---

5. General Laws 1956 (1980 Reenactment) § 44–9–25 provides that:

"Petition for foreclosure of redemption.— After one (1) year from a sale of land for taxes, except as provided in § § 44–9–19 to 44–9–22, inclusive, whoever then holds the title thereby acquired may bring a petition in the superior court for the foreclosure of all rights of redemption thereunder. Such petition shall set forth a description of the land to

which it applies, with its assessed valuation, the petitioner's source of title, giving a reference to the place, book and page of record, and such other facts as may be necessary for the information of the court. Two (2) or more parcels of land may be included in any petition brought by a town, as purchaser of such title or titles, if such parcels are in the same record ownership at the time of bringing such petition * * *."

*son v. Leca,* 447 A.2d 383, 386–87 (R.I. 1982). *See also Slade v. Rose,* 188 F. 749, 751 (1st Cir. 1911) (courts interpret redemption statutes liberally in favor of landowner). However, in this case there was no need for the trial justice to exercise any discretion. The wording of both the redemption statute (§ 44–9–21) and the foreclosure statute (§ 44–9–25) is clear. The plaintiffs' remedy was to file a petition in Superior Court to foreclose defendants' right of redemption. This they did not do, and to allow them to attain by adverse possession what they failed to achieve by complying with the statute amounts to a judicial rewriting of those statutes which provide for redemption. This we would refuse to do.

When called upon to interpret a legislative enactment, this court has repeatedly stated that the words used by the Legislature in the wording of the statute must be given their plain and ordinary meaning, *In re Shepard Co.,* 115 R.I. 290, 342 A.2d 918 (1975), and that unless a contrary intention clearly appears on the face of the statute, the words used are to be accorded their ordinary and customary meaning. *Bristol County Water Co. v. Public Utilities Commission,* 117 R.I. 89, 363 A.2d 444 (1976). This principle of statutory construction was stated succinctly in *Podborski v. William H. Haskell Manufacturing Co.,* 109 R.I. 1, 8, 279 A.2d 914, 918 (1971), wherein this court noted that:

> "except in the case of equivocal and ambiguous language, the words of a statute cannot be interpreted or extended but must be applied literally. * * * The Legislature's meaning and intention must first be sought in the language of the statute itself, and if the language is plain and unambiguous, and expresses a single definite and sensible meaning, that meaning is conclusively presumed to be the Legislature's intended meaning and the statute must be interpreted literally."

In the case at bar, the wording of the redemption statute is perfectly clear. When new legislation was enacted in 1946 addressing tax sales and redemption, the one-year redemption period was abolished in favor of an open-ended redemption period. Thereafter, a person whose property was sold at a tax sale was afforded the opportunity to redeem the property "at any time prior to the filing of [the] petition for foreclosure." Section 44–9–21. We can only conclude that by replacing the one-year redemption period with an open-ended one, the Legislature intended to give the delinquent taxpayer the opportunity to redeem the property until the tax-sale purchaser satisfied the foreclosure requirement outlined in § 44–9–25. To conclude otherwise would be to ignore the statutory change enacted by the Legislature in 1946 and would violate this courts long recognized rules of statutory construction. *In re Opinion to the Governor,* 67 R.I.197, 21 A.2d 267 (1941); *Moretti v. Division of Intoxicating Beverages,* 62 R.I. 281, 5 A.2d 288 (1939); *Morgan v. Allen,* 51 R.I. 228, 153 A. 791 (1931); *Racine v. District Court of the Tenth Judicial District,* 39 R.I. 475, 98 A. 97 (1916).

Since we are of the opinion that strict compliance with the requirements of § 44–9–25 is a necessary condition of foreclosing a prior owner's redemption rights, we would hold that the defendants' adverse possession of the property, in and of itself, was insufficient to vest in them title to the property.