[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this Court is an action to quiet title to a parcel of real property located in the City of Cranston, State of Rhode Island. Mary V. Gliottone ("plaintiff") asks this Court to remove a cloud on her title to the subject property. Said cloud is the right of equitable redemption held by the heirs of Antonio Madalene and Antonio Ventetuolo. This Court conducted a nonjury trial with decision reserved. Jurisdiction is pursuant to Rhode Island General Laws 1956 (1984 Reenactment) § 34-16-7.
TRAVEL AND FACTS
The subject property is described as Lot Two (2) on Assessor's Plat thirty-five (35) of the Tax Assessor of the City of Cranston. The parties to this action agree that the subject property consists of approximately nine acres of unimproved woodland that does not abut a public way.
Both parties agree that the plaintiff's father, Joseph Ventetuolo, purchased the subject property from the City of Cranston on October 19, 1956. (Plaintiff's Exhibit 3). The parties concur that Joseph Ventetuolo in turn conveyed the property to himself and his wife Marie, as joint tenants, by deed dated July 28, 1966. (Plaintiff's Exhibit 4). Both parties agree that approximately three and a half years after Marie died, Joseph Ventetuolo conveyed the subject property to himself and plaintiff, as joint tenants, by a deed dated April 29, 1982 (Plaintiff's Exhibit 5). The parties concur that since Joseph Ventetuolo's death, on June 28, 1982, the plaintiff has become the sole owner of record.
Defendants are the heirs at law of Antonio Madalene and Antonio Ventetuolo, who were the owners of record prior to April 19, 1955. Both parties agree that on that date the property was sold to the City of Cranston for nonpayment of taxes assessed December 31, 1950, December 31, 1951, and December 31, 1952. The parties also agree that prior to the tax sale plaintiff's father, Joseph Ventetuolo, and the other heirs of Messrs. Madalene and Ventetuolo held the subject property as tenants in common.
At trial, the plaintiff presented five (5) witnesses and seven (7) exhibits. Plaintiff and her brother, Joseph Ventetuolo testified. Upon offer of proof, the Court found that testimony by her brothers — Donald, Anthony and Edward Ventetuolo — would merely be cumulative of testimony provided by plaintiff and her brother Joseph Ventetuolo. The Court found plaintiff and her brother, Joseph Ventetuolo, to be credible witnesses possessing a great deal of knowledge about the property before and after the tax sale.
Plaintiff and her brother both testified that from 1937 until 1950 their father paid taxes on the subject property. According to plaintiff and her brother, Antonio Madalene and Antonio Ventetuolo were dead by this time and the tax bill was sent to "Uncle Nicola." They claim that their father paid the taxes because "Uncle Nicola" was too poor to make the payments. Plaintiff and her brother testified that their father stopped paying taxes on the property around 1950. They claim their father's decision to stop paying taxes was due to the fact that his name was not on the title to the property. Plaintiff and her brother further testified that after their father received the deed from the City of Cranston in 1956, he paid taxes on the property until his death in 1982. Plaintiff asserts that she has paid the taxes on the property since 1982.
Plaintiff and her brother Joseph also testified regarding use of the property before and after the tax sale. They testified that the subject property does not abut a public way. Both testified that they and their father had visited the property several times each year. During some of those visits trees were cut down, sometimes cuttings were taken from bushes, other times they picnicked or camped. Plaintiff and her brother testified that they did not see anyone else using the property.
Defendants produced five (5) witnesses and eight (8) exhibits at trial. Alberta Spinney, niece of Joseph Ventetuolo, admitted having no knowledge of the property until 1986 when plaintiff's lawyer notified her about the action to foreclose redemption.
Nicholas Ventetuolo, son of Nicola Ventetuolo, testified that his family and Joseph Ventetuolo's family were close and visited every Sunday from 1954 through 1982. Nicholas does not recall mention of the property during those years. He remembers visiting the property but not after 1939. Nicholas recalls his father Nicola receiving financial help from all of the brothers except Joseph.
Arthur Salzillo, the son of Riga Madelane Salzillo, testified that he did not recall hearing about the property until 1986 when the foreclosure action was brought. Since redemption of the property he claims that he has attempted to pay taxes on the property each year, however, plaintiff makes the payment first.
Biagio Pezza testified that he worked with Joseph Ventetuolo (Plaintiff's father) until Joseph retired. After Joseph retired, Biagio claims that he saw Joseph socially. Biagio testified that Joseph never mentioned the property.
Alvira DiFriscio, daughter of the late Antonio Ventetuolo, claims to have contributed money to payment of the property taxes while her father was alive. She does not recall hearing about the property until 1986.
Plaintiff brings this action pursuant to R.I.G.L. § 34-16-7
to quiet title to the subject property. She asserts that since she and her predecessor in title have been in adverse possession of the property for a period greater than ten (10) years the defendants equitable right of redemption under R.I.G.L. § 44-9-21
is extinguished.
Defendants assert that plaintiff is estopped from pursuing this action because she has accepted monies they tendered pursuant to a February 9, 1987 Superior Court order (P.M. No. 86-0845) granting redemption. Defendants also allege that since plaintiff's predecessor in title (her father, Joseph) held the property in common with the other heirs of Messrs. Madalene and Ventetuolo, prior to the tax sale a showing of "ouster" must be made in addition to satisfying the elements of adverse possession.
DISCUSSION
The Court will first address the issue of whether plaintiff is estopped from bringing the instant action. The monies which defendants claim the plaintiff accepted and retained, rather than depositing in the Registry of the Court, are actually attorney fees awarded directly to plaintiff's attorney by a February 9, 1987 Superior Court order. The Court awarded the counsel fees pursuant to a directive in R.I.G.L. § 44-9-29. Since the attorney fees were awarded to plaintiffs attorney, not to plaintiff, she is not required to deposit those monies into the registry of the court to preserve her right to bring this action. Therefore, plaintiff is not estopped from pursuing this action.
A person whose title to real estate originates from a tax collector's deed may bring an action pursuant to R.I.G.L. §34-16-7 to extinguish the right of redemption under § 44-9-21.Sleboda v. Heirs at Law of Harris, 508 A.2d 652, 657 (R.I. 1986). When the claimant or his predecessor in title has been in "open, exclusive, and uninterrupted possession and enjoyment" of the property "for a period of at least ten (10) years" a "rebuttable presumption in law and fact of a lost grant" arises. R.I.G.L. § 34-16-7. Said lost grant effectively terminates the equitable right of redemption. Sleboda, 508 A.2d at 656-7. One "who claims by adverse possession must establish each of the necessary elements by clear and convincing evidence." Id. at 657.
In Sleboda, a case factually similar to the instant case, plaintiffs' parents purchased property from the Town of Smithfield at a tax sale in 1950. Id. at 653. The unimproved tract was approximately fifteen (15) acres in size and did not abut a public way. Id. From 1950 through 1976 the plaintiffs and their predecessors in title cut trees and gathered firewood on the property approximately two or three times each year. Id.
The surrounding land was also unimproved woodland and was generally used for gathering firewood. Id. at 654.
On December 4, 1975 the heirs of the pre-tax sale owner attempted to redeem the property from plaintiffs. Id.
Plaintiffs brought an action to quiet title pursuant to R.I.G.L. Chapter 16, Title 34. Id. The plaintiffs asked the Court to remove the cloud on their title caused by the heirs attempt to redeem. Plaintiffs claimed to have been in "actual, open, notorious, continuous and exclusive possession of the property under claim of right for a period in excess of ten years as required" by §§ 34-16-7,8 and § 34-7-1. Id.
The trial justice found that from 1950-1976 the plaintiffs and their predecessors in title "possessed and enjoyed" the property "in the only way that it could be possessed and enjoyed and in a manner that was consistent with the possession and enjoyment of surrounding properties." Id. Plaintiffs possession and enjoyment was also found to be "sufficiently exclusive and uninterrupted" to meet the requirements of § 34-16-7. Id.
The Supreme Court of Rhode Island affirmed the trial court's decision. It held that the right of equitable redemption could be extinguished by adverse possession provided the statutory requirements and burden of proof are satisfied. Id. at 657. The Supreme Court concluded that the trial justice "correctly applied the general principles of adverse possession to a wild, overgrown and relatively inaccessible piece of property that had no access" to a public way. Id. at 658. Further, the court held that the trial justice properly took into account the "fact of the tax sale, the notice to defendant's predecessors in title, the constructive notice to all claimants of the deed to plaintiffs' predecessor in title, and the payment of taxes for twenty five years." Id. The Supreme Court decided that the trial justice correctly concluded that plaintiffs had met their burden under the adverse possession statute. Id.
In the case at bar the parties agree that the subject property is an unimproved tract of land almost nine acres in size with no access to a public way. With regard to the elements "actual" and "continuous" possession, according to Rhode Island case law constant use of the property is not required when the nature and character precludes actual occupation. Lee v.Raymond, 456 A.2d 1179, 1183 (1983). When the tract is wild, overgrown and relatively inaccessible "[t]he test is whether the use to which the land has been put is similar to that which would ordinarily be made of like land by owners thereof." Id. at 1183 (citing Russo v. Stearns Farms Realty, Inc., 117 R.I. 387, 392,367 A.2d 714, 717 (1977)).
In the instant case, plaintiff and her brother provided credible unrefuted testimony about the uses to which the subject property was put. Both testified that family members traveled to the property as often as nine or ten times in some years during the period 1956 through 1987. According to plaintiff and her brother uses of the property included taking cuttings from bushes for christmas decorations, cutting down trees and gathering fire wood, planting trees, camping and picnicking. Both testified that they did not encounter anyone else using the property. The testimony of Defendants' five witnesses supports rather than refutes the testimony by plaintiff and her brother. Each of Defendants' witnesses testified that they were not aware of the property until 1986. Since the Defendants were unaware of the property there is no evidence that they interrupted the possession of plaintiff and her predecessor in title. Considering the nature of the property, this Court finds that plaintiff has presented clear and convincing evidence that possession and enjoyment of the property by plaintiff and her predecessors in title is sufficiently exclusive and uninterrupted so as to satisfy those elements of § 34-16-7.
As to whether a possession is open and adverse, no particular act is required to give notice to the world of the claim of adverse possession. Lee, 456 A.2d at 1183. The claimant need only go on to the disputed land and use it adversely to the true owner. Id. "The owner then becomes chargeable with knowledge of whatever occurs on the land in an open manner." Id.
In the instant matter plaintiff and her brother provided credible unrefuted testimony that their family used the property numerous times each year. Such use of the property was adverse to the defendants and, thus, they became chargeable with knowledge of the possession. Based upon the evidence presented, this Court finds clear and convincing evidence that the possession was open and adverse.
Additionally, this Court finds that the above possessory activities in conjunction with the published notice of the tax sale given to defendants and the recording of the deeds, considered together with payment of taxes each and every year from 1956 through 1986 (thirty years) by plaintiff and her predecessor in title, constitute constructive notice of the hostile nature of claims by plaintiff and her predecessor in title and of their possession and enjoyment of the property.
Defendants have also asserted that as a matter of law plaintiff's predecessor in title is viewed as purchasing the property from the City of Cranston for their benefit because of the co-tenant relationship prior to the tax sale. See, Chasev. Durfee, 16 R.I. 248, 14 A. 919 (1988). Defendants argue that when property is held in common the evidence must establish actual ouster or disseisin of co-tenants, in addition to satisfying the statutory requirements, to prove adverse possession. Defendants further argue that plaintiff has not shown actual ouster or disseisin of the co-tenants by clear and convincing evidence and, thus, the Court should find for defendants.
Rhode Island recognizes that there is such a community of interest between tenants in common as to forbid one co-tenant from obtaining superior title to that held by co-tenants through acquisition of title at a tax sale or mortgage sale. See,Rebelo v. Cardoso, 91 R.I 53, 161 A.2d 806 (1960), Chase v.Durfee, 16 R.I. 248, 14 A. 919 (1888). However, the above rule is not applicable in the instant case. The city of Cranston purchased the subject property at a tax sale on April 19, 1955. The deed states that since no one else bid for the property, the "City Treasurer and Collector of Taxes purchased . . . said real estate . . ." (Plaintiff's Exhibit 2). By deed dated October 19, 1956 the City of Cranston conveyed the subject property to plaintiff's predecessor in title, Joseph Ventetuolo. Ownership of the subject property by the City of Cranston for a period of approximately one year and seven months was a sufficient length of time to sever Joseph Ventetuolo's co-tenancy relationship with the defendants. Therefore, the plaintiff need not demonstrate ouster or disseisin of defendants in addition to satisfying the statutory requirements of adverse possession.
For the reasons set forth above, this Court finds that plaintiff has satisfied each element under R.I.G.L. § 34-16-7
with clear and convincing evidence. Therefore, this Court extinguishes the defendants' equitable right of redemption.
Counsel shall prepare the appropriate judgment for entry.